UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )    CRIMINAL NO. 04-CR-10183-MLW
                            )
    v.                      )    VIOLATIONS:
                            )
                            )    18 U.S.C. § 1341
JAMES W. SULLIVAN           )    (Mail Fraud - 3 Counts)
    Defendant               )
                            )

INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

INTRODUCTION

1.  At all times material to this Information, defendant JAMES W. SULLIVAN (hereinafter referred to as "defendant SULLIVAN") was an individual residing in Beverly, Massachusetts.

2.  At all times material to this Information, M/A-COM, INC. (hereinafter referred to as "M/A-COM"), was a division of TYCO Electronics, Inc. with a principal place of business at 1101 Pawtucket Boulevard, Lowell, Massachusetts. M/A-COM was engaged in the business of developing and manufacturing radio frequency and microwave technology, serving such markets as wireless telecommunications, aerospace and defense industries.

3.  At all times material to this Information, defendant SULLIVAN was employed as the Director of Human Resources Support and International Field Sales for M/A-COM. Defendant SULLIVAN had worked for approximately 18 years at M/A-COM, and at all times relevant to this Information, among numerous responsibilities, he

1

had the authority to enter into different business contracts with vendors for services provided to M/A-COM. In this capacity, defendant SULLIVAN had the authority to approve all payments made to vendors on invoices which had been presented to M/A-COM for the payment of services that had been provided.

## THE SCHEME TO DEFRAUD

4. From in or about June 1996 to in or about December 2001, defendant SULLIVAN devised and executed a scheme in Massachusetts and elsewhere, whereby he defrauded M/A-COM of money, in the amount of approximately $692,696.57 by means of false and fraudulent pretenses, representations and promises.

5. It was part of the scheme that defendant SULLIVAN, on numerous occasions, created fraudulent business invoices that he directed to be submitted for payment to M/A-COM. Through the use of bogus invoices, defendant SULLIVAN would cause the accounts payable department at M/A-COM to issue checks that he would use for his own personal expenses and benefit, without the authorization or knowledge of M/A-COM.

6. It was further part of the scheme to defraud that in or about 1996, defendant SULLIVAN set up a phony company called Mail Box Direct National Advertising (hereinafter referred to as "MBNA"), purportedly to place advertisements on behalf of M/A-COM in minority publications, such as: Black Progress Review, Hispanic Network Magazine, Equal Employment Journal, Saludos Hispanos, and

others.  Defendant SULLIVAN set up MBNA as a sham corporation for his own personal benefit, as the defendant well knew that MBNA did not exist as a legitimate company, having no place of business in Boston, Masschusetts as represented, and no telephone number.

7.   It was further part of the scheme to defraud that defendant SULLIVAN caused fraudulent MBNA invoices to be issued and presented for payment to M/A-COM for advertising that had, in fact, not been placed in the manner represented in the various invoices.

8.   It was further part of the scheme that from in or about June 1996 to in or about December 2001, on numerous different dates, defendant SULLIVAN caused the accounts payable department at M/A-COM, to issue checks in varying amounts made payable to MBNA, for services that had not been provided, as had been falsely represented in MBNA invoices and for defendant SULLIVAN's own personal benefit.

9.   It was further part of the scheme to defraud that to process any checks obtained pursuant to the bogus business dealings between M/A-COM and MBNA, sometime prior to July 2, 1996, defendant SULLIVAN opened a business checking account at Fleet Bank, in his own name, d/b/a "MBNA," Account No. XXXXXX8036.

10.  It was further part of the scheme to defraud that on or about July 2, 1996, Defendant SULLIVAN caused a check issued by M/A-COM and made payable to MBNA, in the amount of $11,085.00 to be deposited into Fleet Account No. XXXXXX8036, which defendant used

for his own personal benefit, without the authorization or knowledge of M/A-COM.

11. It was further part of the scheme that sometime prior to February 2000, defendant SULLIVAN created another fraudulent business entity called Economatrix, Inc., purportedly based in Miami, Florida and engaged in the business of providing economic feasibility analysis for employee claims against companies.

12. It was further part of the scheme to defraud that Defendant SULLIVAN, falsely represented to M/A-COM that he was dealing with and communicating with a "Dr. Carlos Reyes," who supposedly was a principal economic analyst for Economatix, providing economic feasibility analyses on employee claims against M/A-COM. Defendant Sullivan knew, that in fact, there was no "Dr. Reyes" located at the address noted for Economatrix, nor was there a "Dr. Reyes" providing services to M/A-COM, and that Defendant SULLIVAN fabricated the fictitious name of "Dr. Reyes" to effectuate his scheme to defraud M/A-COM.

13. It was further part of the scheme to defraud that defendant SULLIVAN used the address of a condominium he owned in Miami, Florida as the bogus address of Economatrix, and on or about May 15, 2000, defendant SULLIVAN caused a fraudulent letter to be purportedly sent by "Dr. Reyes" to defendant SULLIVAN at M/A-COM, in which letter "Dr. Reyes" advised that Economatrix had new offices located at 1402 Brickell Bay Drive, Suite 903, Miami,

Florida (the address of defendant SULLIVAN'S condominium) and where "Dr. Reyes" noted in the letter the renaming of Economatrix to Economatrix International Limited, Inc. (hereinafter referred to as "Economatrix").

14. It was further part of the scheme that defendant SULLIVAN caused detailed, fraudulent invoices that were supposedly signed by "Dr. Reyes" to be submitted to M/A-COM, which invoices falsely represented hours of work performed by "Dr. Reyes," including lengthy meetings and telephone communications with defendant SULLIVAN, which defendant SULLIVAN knew, that in fact, such meetings had never occurred.

15. It was further part of the scheme to defraud that from in or about February 2000 to in or about August 2001, on numerous different dates, defendant SULLIVAN caused the accounts payable department at M/A-COM, to issue checks in varying amounts made payable to Economatrix, for services that had not been provided as falsely represented in Economatrix invoices that were purportedly all signed by "Dr. Reyes."

16. It was further part of the scheme to defraud that all of the checks issued by M/A-COM, made payable to Economatrix, were deposited in a bank account that defendant SULLIVAN had opened and controlled, which monies defendant SULLIVAN used for his own personal expenses and benefit, without the authorization or knowledge of M/A-COM.

17. It was further part of the scheme that defendant SULLIVAN caused the accounts payable department at M/A-COM to mail the checks that it issued to Economatrix, which was supposedly located in Miami, Florida.

18. It was further part of the scheme that defendant SULLIVAN, on different dates and at various times, caused the accounts payable department at M/A-COM to hand the defendant the checks it had issued to MBNA, based on false representations made by defendant SULLIVAN that he would deliver the checks to representatives of MBNA, when in fact, defendant SULLIVAN deposited the checks into a bank account that he held for his own personal benefit.

19. It was further part of the scheme that at some certain date during the scheme, defendant SULLIVAN opened an account at Soverign Bank, Account No. XXXXXXX6082, which account he controlled and used to deposit checks issued by M/A-COM and made payable to Economatrix and MBNA.

20. It was further part of the scheme to defraud that on various dates from on or about July 1997 to on or about July 1999, defendant SULLIVAN caused the accounts payable department of M/A-COM to issue checks to fictitious individuals and companies that he fabricated and used to obtain monies from M/A-COM by falsely representing that said individuals and entities had performed services for M/A-COM and fraudulently claimed that payment was due

from M/A-COM.

21. It was further part of the scheme to defraud that Defendant SULLIVAN fabricated fictitious individual and company names such as "Woodrow James," "Executive Recruiters Group," "Executive Group, Inc.," "Applegate Executive Search Consultants, Inc.," "Christian and Timbers, Inc.," and "CSC Corporation, Inc.," for the purpose of causing the M/A-COM accounts payable department to issue checks made out to the phoney payees, which checks were then deposited into a bank account that was controlled by defendant SULLIVAN, for his own personal benefit, unbeknownst and without authorization of M/A-COM.

22. It was further part of the scheme that defendant SULLIVAN caused numerous checks to be issued to Economatrix, MBNA, and other fictitious entities resulting in a total amount of approximately $692,696.57, through the use of bogus invoices made out in the name of Economatrix, MBNA, and other phony businesses, which funds he used for his own personal expenses and benefit.

COUNTS ONE - THREE
(Mail Fraud - 18 U.S.C. § 1341)

THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:

23. The allegations contained in paragraphs 1 through 22 are realleged and incorporated herein.

24. On or about the dates set forth below, in the District of Massachusetts, the defendant,

JAMES W. SULLIVAN

did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and did cause to be placed in post offices and authorized depositories for mail matter, matters and things to be sent and delivered by the United States Postal Service, and caused to be deposited matters and things to be sent or delivered by a private commercial interstate carrier, and took and received therefrom, such matters and things, and knowingly caused to be delivered by mail according to the directions thereon, such matters and things, as follows:

| COUNT | APPROX. DATE | MAILING |
|---|---|---|
| 1 | 2/1/00 | Check in the amount of $14,196.00 mailed from M/A-COM to Economatrix, Inc. |
| 2 | 7/12/00 | Check in the amount of $19,220.00 mailed from M/A-COM to Economatrix, Inc. |
| 3 | 6/7/01 | Check in the amount of $24,761.25 mailed from M/A-COM to Economatrix, Inc. |

All in violation of Title 18, United States Code, Section 1341.

8

## FORFEITURE ALLEGATIONS
(18 U.S.C. § 981 and 28 U.S.C. § 2461(c))

1. As a result of the offenses in violation of 18 U.S.C. § 1341 (mail fraud) charged in Counts one through three of this Information, the defendant,

JAMES W. SULLIVAN

shall forfeit all property, real and personal, that constitutes, or is derived from, proceeds traceable to the commission of the offense, including but not limited to:

(a) $692,696.57, and

(b) 1402 S Bayshore Drive, Unit # 903, Miami, Florida 33131.

2. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property, including but not limited to the following:

(a) 1402 S Bayshore Drive, Unit # 903, Miami, Florida 33131;

and

    (b)  7 Pilgrim Heights, Beverly, Massachusetts, 01915.

All in violation of Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461(c).

                                         MICHAEL J. SULLIVAN
                                         United States Attorney

By: _____
        CARMEN M. ORTIZ
        Assistant U.S. Attorney

Dated: June 17, 2004