ECKERT SEAMANS

Eckert Seamans Cherin & Mellott, LLC
One International Place
18th Floor
Boston, MA 02110

TEL 617 342 6800
FAX 617 342 6899
www.eckertseamans.com

Stephen R. Delinsky
sdelinsky@eckertseamans.com
(617) 342-6825

December 3, 2004

**HAND DELIVERED**

Carmen M. Ortiz, Assistant United
States Attorney
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210

RE: U.S. v. James Sullivan
CR. No. 4-10183-MLW.

Dear Ms. Ortiz:

I am writing this letter to formally request that you provide me the following documents and materials that are needed by Mr. Sullivan to prepare exculpatory evidence submissions to the Probation Department and to the Court regarding his sentencing. These requests are being submitted pursuant to the Local Rules of Discovery.

1. The report of statement Mr. Sullivan made on or about December 11, 2001 to officials of M/A-COM, Inc. and the report of statement he made on or about June 17, 2002 to United States Postal Inspectors;

2. All documents that reflect the work products that Mr. Sullivan submitted to M/A-COM, Inc. relating to the services he performed partially or completely posing as another individual or corporation as alleged in the Information (see my letter to you dated November 21, 2003 attached hereto);

3. All contract proposals, bills and invoices now known to be submitted by Mr. Sullivan to M/A-COM, Inc. as alleged in the Information (see letter referred to above); and

4. All documents that reflect Mr. Sullivan's offer and/or agreement with M/A-Com, Inc.'s officials to provide his stock options to M/A-COM, Inc. in partial payment of the monies he misappropriated from M/A-COM, Inc.

I thank you in advance for your anticipated cooperation in providing these documents to me as soon as possible in order for me to prepare appropriate sentencing materials.

Very truly yours,

Stephen R. Delinsky

SRD/ecd
cc: Dennis O'Leary, Clerk to Judge Mark L. Wolf (w/encl.)

# ECKERT SEAMANS CHERIN & MELLOTT, LLC

One International Place
18th Floor
Boston, MA 02110
Telephone: 617.342.6800
Facsimile: 617.342.6899
www.escm.com

Boston

Haddonfield, NJ

Harrisburg

Morgantown, WV

Philadelphia

Pittsburgh

Washington, D.C.

November 21, 2003

**HAND DELIVERY**

Carmen M. Ortiz, Assistant United
States Attorney
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210

RE: U.S. v. James Sullivan

Dear Carmen:

I am writing this letter pursuant to Federal Rule of Criminal Procedure 11(f) and, consequently, its content constitutes plea discussions and negotiations. The purpose of this letter is to set forth facts in support of a downward departure for Mr. Sullivan based on the value of the services he provided to his employer.

It was very difficult for Mr. Sullivan to provide me the scope and estimated value of his services to MACOM because he had no records in his possession to allow him to reconstruct with precision the specific details of the services that he performed and billed the Company. He has been able, however, to recall general information about the nature of the services he provided and therefore, we were able to make a good faith estimate of the value of the services he performed.

Mr. Sullivan's routine when he was not traveling on Company business was to arrive at the office at approximately 5:00 a.m. each morning and to leave the office between 6:30 p.m. and 7:00 p.m. From 7:00 a.m. to 6:00 p.m., and as necessary in evenings, weekends and on holidays he performed assignments for his employer. His average work week for the Company was approximately sixty hours, plus any hours of personal time spent traveling to various geographic locations where the Company conducted business.

The time Mr. Sullivan utilized to perform services for which he billed the Company was in addition to any hours spent performing the functions of his position. When he worked on projects for which he billed the Company, he used the time between 5:00 a.m. and 7:00 a.m. and/or from 6:00 p.m. to the time he left for the day. In addition, he used his personal time in the evenings and on weekends to work on these projects.

Mr. Sullivan billed the Company for recruiting, advertising and case research services. Mr. Sullivan's activities in billing the Company for recruiting services, consisted of conducting between six and eight executive search projects for which he billed the Company approximately $200,000. Such senior level recruiting projects if contracted to executive search specialists would be at a flat rate of

{K0268467.1}Stephen R. Delinsky
617.342.6825
srd@escm.com

between thirty and thirty-five percent of the salary for the position, whether or not a candidate was hired. For each position for which Mr. Sullivan billed the Company he spent at least one hundred hours of time over approximately ninety days to complete the search. This time was utilized in locating potential sources of candidates, identifying and contacting prospective candidates, screening candidates resumes and presenting candidates to the Company for hire.

Some of the positions that Mr. Sullivan sought candidates for the Company were; Semi-Conductor Operations Director; Director of Marketing, Wireless; General Counsel; Director of Engineering, Wireless; Operations Manager; and Information Systems Director. Mr. Sullivan believes that the average base salary of the positions for which he conducted these recruiting activities was approximately $80,0000. This means that the Company would have paid fees between $192,000 to $224,000, plus out of pocket expenses for the eight positions if recruited by an executive search firm. Utilizing the average base salary of $80,000, the estimated value of Mr. Sullivan's services calculated at twenty percent, which is the minimum fee charged by a recruiter, results in a $16,000 fee on average per position for a total of between $96,000 to $128,000.

During the period from mid-1996 to mid-2001, Mr. Sullivan developed the themes, wrote the initial and final ad copies and placed several hundred thousand of dollars of employment related advertisements. In order to complete the tasks necessary to prepare an ad for publication, Mr. Sullivan would devote from to six to ten hours of personal time to each ad. He estimates that he billed the Company approximately $350,000 for advertising over this period of time. Since Mr. Sullivan performed the services routinely performed by a third party advertising agency, the calculation for the value of his services is fifteen percent (the standard advertising agency rate) of the billed amount or $52,000.

In this same time period, Mr. Sullivan also billed the Company approximately $100,000 at the rate of $195.00 per hour for research concerning agency and court decisions, monetary awards and the economic value of settlement versus litigation on a number of actual and threatened law suits against the Company. The $195.00 billing rate that Mr. Sullivan utilized was at least twenty percent less than the lowest hourly rate the Company routinely paid for externally paid professional services for the same tasks. Consequently, Mr. Sullivan has valued his services at $100,000.

Since Mr. Sullivan performed these services, on his own time, outside of his normal hours, I contend that the value of his services that the Company received should be deducted from the loss. Mr. Sullivan and I have spent a great deal of time doing this analysis. It was extremely difficult to complete without access to Mr. Sullivan's files, which are in the Company's custody.

I also respectfully direct your attention to the recent plea agreement negotiated by your office in United States v. M. William Potts, III. Mr. Potts' conduct was strikingly similar to the conduct alleged against Mr. Sullivan, yet Mr. Potts' plea agreement allowed him to make arguments for any and all downward departures and even permitted him to contest increases in the guidelines calculation for more than minimal planning and abuse of trust. The government alleged that Mr. Potts, a former FBI agent, stole over $1,300,000 from his employer. The government



agreed to make a recommendation of no less than 27 months, but the court imposed a sentence of 21 months. I feel, that Mr. Sullivan, based on this precedent, should be entitled to argue for a downward departure as set forth herein.

I appreciate your patience in this matter and look forward to discussing these issues with you at your convenience.

Very truly yours,

Stephen R. Delinsky

SRD/ecd