EXHIBIT "1"

94R430384 1994 SEP 05

OFF.
REC. 16504P03957

DECLARATION OF CONDOMINIUM
OF
COMMODORE BAY CONDOMINIUM

Prepared By:

GARY A. KORN, ESQUIRE
BEDZOW, KORN & KAN, P.A.
20803 Biscayne Boulevard
Suite 200
Aventura, Florida 33180

OAK/2646/2612.0000

OFF. 16504PG3958

## TABLE OF CONTENTS TO
## DECLARATION OF CONDOMINIUM OF
## COMMODORE BAY CONDOMINIUM

| Article | | Page |
|---|---|---|
| I | SUBMISSION STATEMENT | 1 |
| II | DEFINITIONS | 1 |
| III | UNITS; APPURTENANCES; LIMITED COMMON ELEMENTS; POSSESSION AND ENJOYMENT | 2 |
| IV | RESTRAINT UPON SEPARATION AND PARTITION OF LIMITED COMMON ELEMENTS AND COMMON ELEMENTS | 4 |
| V | COMMON ELEMENTS | 4 |
| VI | CONDOMINIUM PROPERTY AND IDENTIFICATION OF UNITS | 4 |
| VII | OWNERSHIP OF COMMON ELEMENTS AND SHARES OF COMMON SURPLUS | 5 |
| VIII | AMENDMENT TO DECLARATION | 5 |
| IX | THE ASSOCIATION, ITS POWERS AND RESPONSIBILITIES | 6 |
| X | MAINTENANCE, ALTERATIONS AND IMPROVEMENTS | 7 |
| XI | ENFORCEMENT OF MAINTENANCE | 9 |
| XII | COMMON EXPENSES | 9 |
| XIII | ASSESSMENTS; LIABILITY, LIEN AND PRIORITY; INTEREST; COLLECTION | 9 |
| XIV | MAINTENANCE GUARANTEE | 11 |
| XV | LIMITATION OF LIABILITY | 12 |
| XVI | LIENS | 12 |
| XVII | EASEMENTS | 12 |
| XVIII | OBLIGATIONS OF UNIT OWNERS | 13 |
| XIX | INSURANCE | 14 |
| XX | EMINENT DOMAIN OR CONDEMNATION PROCEEDINGS | 19 |
| XXI | RULES AND REGULATIONS | 19 |
| XXII | MAINTENANCE CONTRACTS | 20 |
| XXIII | MANAGEMENT AGREEMENTS | 20 |
| XXIV | TERMINATION OF CONDOMINIUM | 20 |
| XXV | ASSIGNABILITY OF RIGHTS OF DEVELOPER | 21 |
| XXVI | EXECUTION OF DOCUMENTS REQUIRED BY THE CITY OF MIAMI AND/OR THE COUNTY OF DADE AND/OR THE STATE OF FLORIDA | 22 |
| XXVII | DEVELOPER'S RIGHT TO AMEND DECLARATION OF CONDOMINIUM | 22 |
| XXVIII | PETS | 22 |
| XXIX | CONDOMINIUM WORKING CAPITAL FUND | 23 |
| XXX | CONVEYANCES, SALES, RENTALS, LEASES AND TRANSFERS | 23 |
| XXXI | REMEDIES | 25 |
| XXXII | ADDITIONAL PROVISIONS | 26 |

## EXHIBITS TO DECLARATION OF CONDOMINIUM
## OF
## COMMODORE BAY CONDOMINIUM

"A"   Legal Description of Real Property

"B"   Plot Plan, Survey and Graphic Description

"C"   Share of Common Expenses, Common Elements and Common Surplus

"D"   Articles of Incorporation of Commodore Bay Condominium Association (Dade County), Inc.

"E"   By-Laws of Commodore Bay Condominium Association (Dade County) Inc.

"F"   Rules and Regulations

BROZOW, KORN & KAN, P.A., 20803 BISCAYNE BOULEVARD, SUITE 200, AVENTURA, FLORIDA 33180 · (305) 935-6600

CAX/2412.0010/2616

OFF. 16504PG3959
REC.

2

## DECLARATION OF CONDOMINIUM

OF

## COMMODORE BAY CONDOMINIUM

===================================

### I.    SUBMISSION STATEMENT

THE ARMONIA CORPORATION, a Florida corporation (hereinafter called the "Developer") is the owner, in fee simple, of the real property legally described in Exhibit "A" attached hereto. Developer does hereby submit the real property described in Exhibit "A" attached hereto, the improvements thereon and the rights and easements appurtenant thereto to condominium ownership pursuant to Chapter 718, Florida Statutes and declares same a condominium known as COMMODORE BAY CONDOMINIUM (the "Condominium").

All of the restrictions, reservations, covenants, conditions and easements contained herein shall constitute covenants running with the land or equitable servitudes upon the land, as the case may be, and shall be binding on each unit owner, and each unit owner's heirs, personal representatives, successors and assigns. Both the burdens imposed and the benefits provided shall run with the title to each Unit and their appurtenant interests in the common elements as defined herein.

### II.    DEFINITIONS

As used herein and in the Exhibits attached hereto and in all amendments thereto, unless the context requires otherwise:

A. "Act" means and refers to the Condominium Act of the State of Florida in effect on the date of recordation of this Declaration of Condominium.

B. "Assessment" means the share of the funds required for the payment of common expenses which from time to time are assessed against a unit owner.

C. "Association" or "Corporation" means COMMODORE BAY CONDOMINIUM ASSOCIATION (DADE COUNTY), INC., a Florida corporation not for profit, the entity responsible for the operation of the Condominium.

D. "Board" or Board of Directors" means the Board of Directors of the Association.

E. "By-Laws" means the By-Laws of the Association.

F. "Condominium Documents" means this Declaration and all Exhibits attached hereto as the same, from time to time, may be amended.

G. "Condominium Property" means and includes the land submitted to condominium ownership, whether or not contiguous, all improvements thereon, and all easements and rights appurtenant thereto intended for use in connection with the Condominium.

H. "Unit" or "Condominium Unit" means that portion of the Condominium Property which is to be subject to exclusive ownership; said Unit being a unit space identified on the Plot Plan, Survey and Graphic Description attached hereto as Exhibit "B".

I. "Common Elements" means the portion of the Condominium Property not included in the Units.

BRODOW, KORN, KAN & GLASER, P.A., 20803 BISCAYNE BOULEVARD, SUITE 200, P.O. BOX 800261, HALLANDALE FL 33008 · (305) 935-6888

OFF. 15504 PG 3960
REC.

J. "Common Expenses" means: (1) expenses of administration and management of the Condominium Property; (2) expenses of maintenance, operation, repair or replacement of the common elements; (3) expenses declared common expenses by the provisions of this Declaration or the By-Laws; and (4) any valid charge against the Condominium as a whole.

K. "Common Surplus" means the excess of all receipts of the Association collected on behalf of the Condominium, (including, but not limited to, assessments, rents, profits and revenues) over and above the amount of money expended as common expenses.

L. "Condominium" means that form of ownership of real property created pursuant to the provisions of the Act which is comprised of Units that may be owned by one or more persons or entities and where there is appurtenant to each Unit, as part thereof, an undivided share in the common elements.

M. "Condominium Parcel" means a Unit together with the undivided share in the common elements which is appurtenant to the Unit.

N. "Declaration" or "Declaration of Condominium" means this instrument, and all Exhibits attached hereto, as same may from time to time be amended.

O. "Developer" means THE ARMONIA CORPORATION, a Florida corporation and such assigns as may be designated in writing by THE ARMONIA CORPORATION, a Florida corporation, pursuant to the provisions of Article XXV hereinafter.

P. "Institutional Lender" or "Institutional Mortgagee" means the Developer, a bank, savings and loan association, insurance company, a generally recognized and licensed mortgage company, real estate investment trust, public company pension fund, public company pension trust, the Federal Home Loan Mortgage Corporation, the Federal National Mortgage Association, or any other generally recognized institutional-type lender or its loan correspondent, or any agency of the United States Government or any lender providing funds to the Developer for the purpose of constructing improvements upon the Condominium Property (and such lender's successors and assigns) holding a mortgage encumbering a Unit.

Q. "Institutional Mortgage" means a mortgage encumbering a Unit held by an Institutional Lender or by an Institutional Mortgagee.

R. "Insurance Trustee" means that Florida Bank having trust powers, designated by the Board to receive proceeds on behalf of the Association, which proceeds are paid as a result of casualty or fire loss covered by insurance policies.

S. "Limited Common Elements" means those common elements which are reserved for the use of a certain Unit or certain Units to the exclusion of all other Units.

T. "Unit Owner" or "Owner" means that person or entity owning a Unit.

III.    UNITS, APPURTENANCES: LIMITED COMMON ELEMENTS:
POSSESSION AND ENJOYMENT

A. A Unit is a separate parcel of real property, the ownership of which may be in fee simple, or any other estate in real property recognized by law.

B. The upper and lower boundaries of the Unit shall be the following boundaries extended to an intersection with the perimetrical boundaries:

-2-

BERZON, KOHN, KAN & GLASER, P.A. 20800 BISCAYNE BOULEVARD, SUITE 201, N.W. BON, FLORIDA, TELEPHONE (1986) (1986)

OFF. REC. 16504PG3961

1. **Upper Boundaries** -- the horizontal plane of the undecorated finished ceiling.

2. **Lower Boundaries** -- the horizontal plane of the undecorated finished floor.

C. The perimetrical boundaries of the Unit shall be the vertical planes of the undecorated finished interior of the walls bounding the Unit extending to intersections with each other and with the upper and lower boundaries. Where there is an aperture in any perimetrical boundary including, but not limited to, windows and doors, the vertical boundary shall be extended at all such places, at right angles as to the dimensions of such aperture, so that the perimetrical boundary at such places shall be coincident with the exterior unfinished surface of such aperture, including the framework thereto. Exterior walls made of glass or glass fixed to metal framing, exterior windows and frames, exterior glass sliding doors, frames and casings, shall be included within the Unit and shall not be deemed to be a common element.

D. Where a balcony, patio, terrace, loggia, porch, stairway or other portion of the building or any fixture attached to the building serves only the Unit being bounded, the perimetrical boundary of such Unit shall vary with the exterior unfinished surface of any such structure extended in a vertical plane, where necessary, to the horizontal boundary.

E. Each Unit shall not be deemed to include the undecorated and/or unfinished surfaces of the perimeter walls, floors and ceilings surrounding the Unit nor shall a Unit be deemed to include pipes, wires, conduits or other public utility lines running through the Unit which are utilized for or serve more than one Unit, which items are hereby these presents hereby made a part of the common elements. A Unit shall be deemed to include the interior walls and partitions which are contained in a Unit and also shall be deemed to include the inner decorated and/or finished surfaces of the perimeter walls, floors and ceilings or the Unit, including plaster, paint, wallpaper, etc.

F. There shall pass with each Unit as an appurtenance thereto:

1. An undivided interest in the common elements.

2. An undivided share in the common surplus.

3. An exclusive easement for the use of the air space occupied by the Unit as it exists at any particular time and as the Unit may lawfully be altered or reconstructed from time to time, which easement shall be terminated automatically in any air space which is vacated from time to time.

4. Such other easements, rights or privileges which, pursuant to the provisions to this Declaration and of law, are deemed appurtenances to the Unit.

5. Membership for the unit owner in the Association, with the full voting rights appertaining thereto, subject to the rights and obligations of membership therein.

G. The owner of a Unit is entitled to the exclusive possession of the Unit. Each owner of a Unit shall be entitled to use the common elements in accordance with the purposes for which they are intended, but no such use shall hinder or encroach upon the lawful rights of owners of other Units. There shall be a joint use of the common elements and a joint mutual easement for that purpose is hereby created.

H. Each owner of a Unit shall pay the cost of maintaining all sliding glass doors contained within his Unit, if any, and the

-3-

BEDZOW, KONN, KAN & GLASER, P.A., 20533 BISCAYNE BOULEVARD, SUITE 220, P.O. BOX 8020, HALLANDALE, FLORIDA 33009-8820

BK: 16504 PG: 3962

replacement or repair of windows and window operators, screening, wiring, electrical outlets and fixtures which are wholly within the Unit. Rules and regulations regarding the uniform maintenance and appearance of all exterior facing parts of the improvements may be promulgated, from time to time, by the Association.

I.  There shall be one automobile parking space assigned to each Unit in this Condominium. In addition, as shown within Exhibit "B" attached hereto, there are storage spaces within this Condominium and these storage spaces may be assigned to Units in this Condominium. The parking space and any storage space so assigned, shall be deemed to be limited common elements appurtenant to the Unit to which the parking space and storage space is assigned. The assignment of the parking space and the storage space shall be made by the Developer. Upon the assignment of an automobile parking space or a storage space to a particular Unit, the same shall be appurtenances to said Unit and shall pass as an appurtenance thereto. All unassigned parking spaces and all unassigned storage spaces shall be common elements and shall be available for uses designated by the Board of Directors of the Association, except that so long as the Developer owns at least one (1) Unit in the Condominium, it shall have the right and authority to assign all unassigned parking spaces and all unassigned storage spaces.

J.  No Unit may be partitioned or subdivided.

K.  Each Unit shall be used only for residential purposes.

IV.  RESTRAINT UPON SEPARATION AND PARTITION OF
     LIMITED COMMON ELEMENTS AND COMMON ELEMENTS

A.  The limited common elements and the undivided share in the common elements which is appurtenant to a Unit shall not be separated therefrom and shall pass with the title to the Unit, whether or not separately described.

B.  The undivided share in the common elements and in the limited common elements appurtenant to a Unit cannot be conveyed or encumbered except together with the Unit.

C.  The undivided share in the common elements and in the limited common elements appurtenant to each Unit shall remain undivided, and no action for partition shall lie.

V.  COMMON ELEMENTS

Common elements includes within its meaning the following items:

A.  All of the real property, other than the Units and the limited common elements, all of which are more particularly described and set forth in the Plot Plan, Survey and Graphic Description attached hereto as Exhibit "B".  Common elements shall include easements through Units for all conduits, pipes, ducts, plumbing, wiring and all other facilities for the furnishing of utility services to Units and the common elements and easements of support in every portion of a Unit which contributes to the support of the improvements and shall further include all personal property held and maintained for the joint use and enjoyment of the unit owners.

B.  Installations for the furnishing of utility services to more than one Unit or to the common elements or to a Unit other than the Unit containing the installation.

C.  Easements for encroachments by the perimeter walls, ceilings, and floors surrounding each Unit caused by minor inaccuracies in building or rebuilding which now exist or hereafter exist, and such easements shall continue until such encroachment no longer exists.

-4-

OFF.
REC. 16504PG3963

D.  Easements for overhanging troughs and gutters, downspouts, and the discharge therefrom of rain water and the subsequent flow thereof over Units.

E.  A non-exclusive easement for ingress and egress over the walks and other rights-of-way of the common elements as shall be necessary to provide access to the public ways to and from the Units.

VI.    CONDOMINIUM PROPERTY AND IDENTIFICATION OF UNITS

A.  Annexed hereto as Exhibit "B" is a survey of the real property being submitted to the condominium form of ownership, together with a plot plan and graphic description of the improvements in which the Units are located.

B.  The identification, location and dimensions of each Unit, the limited common elements and the common elements appear on the afore-described Exhibit "B".  Each Unit has been given a designation for purposes of identification so that no Unit has the same designation as any other Unit.  Each Unit is described in Exhibit "B" annexed hereto in such a manner that there can be determined therefrom the identifi-cation, location and approximate dimensions of each Unit and the limited common elements and common elements appurtenant thereto.  The legend and notes contained in Exhibit "B" are incorporated herein and made a part hereof by reference.

VII.   OWNERSHIP OF COMMON ELEMENTS
       AND SHARES OF COMMON SURPLUS

The owner of each Unit shall own a share and an interest in the Condominium Property which is appurtenant to unit owner's Unit which includes, but is not limited to, the following items:

A.  Common Elements -- The undivided shares, stated as percentages, in the common elements appurtenant to each of the Units as set forth on the schedule attached hereto and made a part hereof by reference as Exhibit "C", and

B.  Common Surplus -- Any common surplus of the Association, in the same percentages as the common elements appurtenant to each Unit are owned, as set forth in Exhibit "C".  This ownership, however, does not include the right to withdraw or require payment or distribution of said common surplus.

VIII.  AMENDMENT TO DECLARATION

A.  Except as herein or otherwise provided, this Declaration may be amended in the following manner:

1.  Notice of the subject matter of a proposed amendment shall be included in the notice of any meeting at which a proposed amendment is to be considered.

2.  An amendment may be proposed by either a majority vote of the Board of Directors of the Association, or by the vote of members holding not less than 51% of the total votes of the Association. Directors and members not present in person or by proxy at the meeting considering the amendment may express their approval or disapproval in writing, provided such approval or disapproval is delivered to the Secretary at or prior to the meeting.  Except as elsewhere provided, a resolution adopting the proposed amendment must be approved by either:

-5-

OFF. 16504 PG 3964

Directors and the vote of the members holding not less than 66-2/3% of the Board of, total votes of the Association; or

b.    The vote of members holding not less than 90% of the total votes of the Association.

B.    No amendment shall change the configuration of any Unit nor a Unit's proportionate share of the common elements, the common expenses or common surplus, nor the voting rights appurtenant to any Unit, unless the amendment is approved by not less than 51% of the total votes of the Association.

C.    Notwithstanding anything to the contrary herein, the Developer reserves the right to amend this Declaration and its Exhibits so as to correct any omissions or errors (including scrivener's or surveyor's errors), so long as such amendments do not materially and adversely affect the rights of unit owners or mortgagees. Such amendment need not be executed and acknowledged by the Developer only and be authorized by the vote of members holding not less than 51% of the total votes of the Association.

In addition, the Developer reserves the right to amend this Declaration pursuant to the provisions of Article XXVII herein, provided said amendment(s) is in accordance with the Act.

D.    In the event it shall appear that there is an error or omission in this Declaration or in the Exhibits attached hereto, then and in that event, the Association may correct such error and/or omission by amendment to this Declaration in the following manner:

1.    Notice of the subject matter of a proposed amendment to cure a defect, error or omission shall be included in the notice of any meeting at which such amendment is to be considered;

2.    A resolution for the adoption of such a proposed amendment may be proposed by either the Board of Directors of the Association or by the members of the Association and members of the Association not present in person or by proxy at the meeting considering the amendment may express their approval or disapproval by writing delivered to the Secretary at or prior to the meeting considering adoption of the amendment. Such approvals to amend this Declaration must be either by:

a.    The vote of not less than 33-1/3% of the Board of Directors and the vote of the members holding not less than 10% of the total votes of the Association; or

b.    The vote of members holding not less than 25% of the total votes of the Association; or

c.    In the alternative, an amendment may be made by an agreement signed and acknowledged by all unit owners in the manner required for the execution of a deed, and such amendment shall be effective when recorded in the Public Records of Dade County, Florida.

E.    No provision of this Declaration shall be revised or amended by reference to its title number only. Proposals to amend the existing provisions of this Declaration shall contain the full text of the new provision to be amended; new words shall be lined through with hyphens. However, if the proposed change is so extensive that this procedure would hinder, rather than assist, the understanding of the proposed amendment, it is not necessary to use underlining and hyphens as indicators of words added or deleted but, instead, a notation must be

-6-

BERZOW, KOHN, KAN & GLAZER, P.A. ...

OFF.
REC. 16504PG3965

inserted immediately preceding the proposed amendment in substantially
the following language: "Substantial rewording of Declaration. See
provision            for present text." Non-material errors or
omissions in the amendment process shall not invalidate an otherwise
properly promulgated amendment.

F.  Except as may be otherwise provided in this Declaration,
a copy of each amendment shall be attached to a certificate, certifying
that the amendment was duly adopted. Each amendment shall be effective
when the certificate and copy of the amendment are recorded in the
Public Records of Dade County, Florida.

IX.    THE ASSOCIATION: ITS POWERS AND RESPONSIBILITIES

A.  The Condominium is governed and administered by COMMODORE
BAY CONDOMINIUM ASSOCIATION (DADE COUNTY), INC., a Florida not-for-
profit corporation. A copy of the Articles of Incorporation of the
Association is annexed hereto and made a part hereof as Exhibit "D".
Amendments to the Articles of Incorporation shall be valid when adopted
in accordance with its provisions and filed with the Secretary of State
or as otherwise required by Chapter 617, Florida Statutes, as same may
be amended from time to time. Article VIII of this Declaration,
regarding amendments to this Declaration, shall not pertain to
amendments to the Articles of Incorporation, the recording of which
shall not be required to be effective unless such recording is otherwise
required by law. Notwithstanding the Articles of Incorporation shall,
however, change the size of any Unit nor the share of common elements,
common expenses or common surplus appurtenant to a Unit nor the voting
rights appurtenant to a Unit unless the record owner or owners thereof
and all record owners of mortgages encumbering such Unit or Units shall
join in the execution of such amendment.

B.  The powers and duties of the Association shall include
those set forth in the By-Laws annexed hereto and made a part hereof as
Exhibit "E" but, in addition thereto, the Association shall have all of
the powers and duties set forth in the Act, as well as all of the powers
and duties granted to or imposed upon it by this Declaration, including:

1.  The irrevocable right to have access to each Unit from
time to time during reasonable hours as may be necessary for the
maintenance, repair or replacement of any common elements or of any
portion of a Unit to be maintained by the Association or as may be
necessary to prevent damage to the common elements or to a Unit or
Units.

2.  The power to make and collect assessments, regular and
special, and to lease, maintain, repair and replace the common elements.

3.  The duty to maintain accounting records prepared
according to normally accepted accounting practices, which records shall
be open to inspection by unit owners at reasonable times during normal
business hours.

4.  The power to enter into contracts with others for a
valuable consideration for maintenance and management, including the
normal maintenance and repair of the common elements. The duty and
responsibility to maintain and preserve the landscaping, gardening,
painting, repairing and replacement of the common elements shall not
relieve the unit owner of the owner's personal responsibility to
maintain and preserve the interior of his Unit and the limited common
elements appurtenant thereto, and to paint, clean, decorate, maintain
and repair his Unit.

5.  The power to adopt reasonable rules and regulations
for the maintenance and conservation of the Condominium Property and for
the health, comfort, safety and welfare of the unit owners.

-7-

OFF.
REC. 16504 PG 3966

C. The By-Laws may be amended in the manner provided for therein, but no amendment to the By-Laws shall be adopted which would affect or impair the validity or priority of any Institutional Mortgage encumbering any Unit (s) or which would change the provisions of the By-Laws with respect to the rights of Institutional Mortgagees, without the written approval of all Institutional Mortgagees of record.

D. Each Unit shall be entitled to one vote to be cast in accordance with the provisions of the Articles of Incorporation and the By-Laws of the Association.

E. The Association or its designees shall maintain such records as are required by Section 718.111, Florida Statutes.

F. In any legal action in which the Association may be exposed to liability in excess of insurance coverage protecting it and the unit owners, the Association shall give notice of the exposure within a reasonable time to all unit owners and to all Institutional Mortgagees who may be exposed to the liability, so that such unit owners and/or such Institutional Mortgagees shall have the right to intervene and defend.

X. MAINTENANCE, ALTERATIONS AND IMPROVEMENTS

The responsibility for the maintenance of the Condominium Property and restrictions upon its alteration and improvement shall be as follows:

A. By the Association. -- The Association shall maintain, repair and replace at the Association's own expense:

1. All common elements.

2. All portions of the Units (except interior wall surfaces) contributing to the support of the building, which portions shall include, but not be limited to, the outside walls of the building and load-bearing columns.

3. All conduits, ducts, plumbing, wiring and other facilities for the furnishing of utility services which are contained in the portions of a Unit contributing to the support of the building or within interior boundary walls, and all such facilities contained within a Unit which service part or parts of the Condominium other than the Unit within which contained.

4. All parking areas of the Condominium.

5. All property owned by the Association.

B. By the Unit Owner. -- The responsibilities of each unit owner shall be as follows:

Subject to the provisions of Article IX, Subparagraph B1 of this Declaration, all incidental damage caused to a Unit by such work shall be promptly repaired at the expense of the Association.

1. To maintain, repair and replace, at unit owner's expense, all portions of the that except the portions to be maintained, repaired and replaced by the Association, included within the responsibility of the unit owner shall be to maintain, repair and replace all plate glass, sliding glass doors, windows, screens and doors opening into or onto the Unit. All such maintenance, repairs and replacements shall be done without disturbing the rights of other unit owners.

2. To maintain, repair and replace at unit owner's expense, unit owner's individual air-conditioning and heating system located inside unit owner's individual Unit.

10

-6-

BERZON, KERN, KAN & GLASER, P.A.

OFF. 16504 PG 3967
REC.

3.  Within the Unit, to maintain, repair and replace at unit owner's expense all ranges, stoves, refrigerators, dishwashers, washing machines, dryers or other appliances or equipment, including all fixtures and/or their connections required to provide water, light, power, telephone, sewage and sanitary service to unit owner's Unit. The floor and interior walls of any balcony, terrace or patio of a Unit shall be maintained by the unit owner at such unit owner's expense.

4.  Within and without the Unit, not to paint or otherwise decorate or change the appearance of any exterior portion of the building, including balconies, patios or terraces, or any stucco portion of the Condominium.

5.  To promptly report to the Association any defects of which is that of the Association.

6.  No unit owner, other than the Developer, shall make any alterations in the portions of the Condominium which are to be maintained by the Association, or remove any portion thereof or make any additions thereto or do any work which would jeopardize the safety or soundness of the building or impair any easement, without first obtaining approval from the Board of Directors of the Association.

C.  Alteration and Improvement of Common Elements -- There shall be no material alterations or substantial additions to the common elements, except as the same are authorized by the Board of Directors and ratified by the affirmative vote of members holding not less than 66-2/3's of the total votes of the Association. The cost of the fore-going shall be assessed as common expenses of the Condominium.

D.  Alteration of Unit.  No owner of a Unit shall make or cause to be made any structural modifications or alterations or replacements in the unit owner's Unit, or in the exterior doors of unit owner's Unit, or in the water, gas, electrical, plumbing, air-conditioning equipment or utilities therein, without the consent of the Board of Directors of the Association, which consent may be withheld in the event the Board of Directors determines that such structural alteration, modification or replacement would in any manner endanger the structural soundness of the building. If the modification, alteration or replacement desired by an owner of a Unit involves the removal of any permanent interior partition, the Board of Directors may permit same if the same is not a load-bearing partition and if the same does not interfere with any common utility source. A unit owner making or causing to be made any structural modification, alteration or replacement to unit owner's Unit agrees, and shall be deemed to have agreed, to hold the Association and all other unit owners harmless from any liability arising therefrom. No unit owner shall cause any improvements or changes to be made to the exterior of the Condominium including, but not limited to, painting, installation of electrical wires, television antenna, or air conditioning units which may protrude through the walls or roof of the building or in any manner change the appearance of the exterior of the building or any portion of the building not totally within each Unit, without consent of the Board of Directors. No unit owner, other than the Developer and/or the agents of the Developer, or any other person shall install upon the roof or exterior of the building or upon the common elements of the Condominium, any television antennae, radio antennae, electric, electronic, electro-mechanical or other communications device, decorative item or affixed furnishing, without the consent of the Board of Directors.

E.  Liability of Unit Owner.  Should a unit owner undertake unauthorized additions and modifications, or should a unit owner refuse to make repairs as required, or should a unit owner cause damage to the Condominium Property, the Association shall have the right to avail itself of the remedies set forth in Section 718.303(1) and (3),

-9-

BEDZOW, KOHN, KAM & GLASER, P.A. 2800 BISCAYNE BOULEVARD

OFF.
REC. 16504 PG 3966

Florida Statutes, which remedies include the levy of a reasonable fine, an action for damages or an action for injunctive relief.

F. **Insurance Proceeds.** Whenever any maintenance, replacement and repair of any items for which the owner of a Unit is responsible is made necessary by any loss covered by insurance maintained by the Association, the proceeds of the insurance received by the Association, or by the Insurance Trustee, shall be used for the purpose of accomplishing such maintenance, repair or replacement. The unit owner shall be required to pay all of the costs thereof that exceed the amount of the insurance proceeds.

XI.    ENFORCEMENT OF MAINTENANCE

In the event the owner of a Unit fails to maintain the Unit and the appurtenances thereto, as required above, the Association, the Developer, or any other unit owner shall have the right to proceed in a court of equity to seek compliance with the foregoing provisions.

Further, in the event a unit owner violates any of the provisions of Article X above, the Developer and/or the Association shall have the right to take any and all such lawful steps as may be necessary to remedy such violation.

XII.    COMMON EXPENSES

A.    Common expenses shall include expenses of the operation, maintenance, repair or replacement of the common elements (and those portions of the limited common elements to be maintained by the Association), costs of carrying out the powers and duties of the Association, and any other expenses designated as common expenses by the Association.

B.    All costs of water, gas, trash and garbage collection and sewage service for the Condominium.

C.    Common expenses shall be shared by each Unit in accordance with each Unit's respective interests in the common elements and in the common surplus, as set forth in Exhibit "C". The foregoing ratio of sharing common expenses and assessments shall remain, regardless of the purchase price of the Units, their locations or the square footage included in each Unit.

XIII.    ASSESSMENTS; LIABILITY, LIEN AND PRIORITY; INTEREST; COLLECTION

A.    The Association, through its Board of Directors, shall have the power to fix and determine from time to time, a budget necessary to provide for the common expenses of the Condominium. A unit owner, regardless of how title is acquired, except as provided in Article XIV below, shall be liable for all assessments coming due while such unit owner is the owner of a Unit. In a voluntary conveyance, the grantee shall be jointly and severally liable with the grantor for all unpaid assessments against the Unit being conveyed, up to the time of such voluntary conveyance.

B.    The Board of Directors shall adopt a Budget for the Association during the month preceding the fiscal year wherein the Budget will take effect, which Budget shall include a schedule of assessments to be paid by the unit owners.

C.    Each unit owner shall be responsible for the payment of the assessments imposed against the unit owner's Unit in an amount equal to the percentage of responsibility for payment of common expenses set forth in Exhibit "C" attached hereto.

-10-

OFF.
REC. 16504P3969

D.   Regular assessments shall be paid by the unit owners on a monthly basis payable on the first day of each and every month.

E.   Should the Association, through its Board of Directors, at any time determine that the assessments made are not sufficient to pay the common expenses and in the event of emergencies, the Board of Directors shall have the authority to levy and collect additional and/or special assessments to meet such needs of the Association.

F.   The Board of Directors of the Association, in assessing for common expenses, shall (unless waived pursuant to applicable law) include therein a sum to be collected and maintained as a reserve fund for capital expenditures and deferred maintenance. These accounts shall include, but are not limited to, roof replacement, building painting and pavement resurfacing, regardless of the amount of deferred maintenance expense or replacement cost and for any other item for which the deferred maintenance expense or replacement cost exceeds $10,000.00. All reserve funds, and any interest accruing thereon, shall remain in the reserve account, and such reserve expenditures, unless the use of reserve funds for other purposes is approved in advance by the vote of unit owners holding not less than a majority of the voting interests present at a duly called meeting of the Association.

G.   The Board of Directors of the Association, in assessing for common expenses, may include therein a sum to be collected and maintained as a general operating reserve which shall be used to provide a measure of financial security during periods of stress. Such sums may be used to meet deficiencies from time to time existing as a result of delinquent payment of assessments by unit owners or as a result of emergencies.

H.   All monies collected by the Association from assessments imposed against unit owners in this Condominium shall, unless the same is collected for the benefit of others, be the separate property of the Association. Such monies may be applied by the Association to the payment of any expense of operating and managing the Condominium Property, or to the proper undertaking of all acts and duties imposed upon it by virtue of the provisions of this Declaration. All monies received from assessments imposed against unit owners in this Condominium may be commingled with monies held by the Association. All monies received by the Association from assessments imposed against unit owners in this Condominium shall be held for the benefit of the unit owners in this Condominium. No unit owner shall have the right to assign, hypothecate, pledge or in any manner transfer his interest therein, except as an appurtenance to his Unit. Such funds shall not be subject to attachment or levy by a creditor or judgment creditor of a unit owner. When the owner of a Unit shall cease to be a member of the Association, by the divestment of his ownership of such Unit by whatever means, the Association shall not be required to account to such owner for any share of the funds or assets of the Association.

I.   Liability for assessments may not be avoided by abandonment of a Unit, or by waiver of the use of any common elements or other property which a unit owner is entitled to use or enjoy.

J.   Assessments not paid within five (5) days of when due shall bear interest from the date when due until paid at the rate of eighteen percent (18%) per annum. Additionally, the failure to pay any assessment within five (5) days from the date due shall entitle the Association to levy an administrative late fee, in addition to interest upon the delinquent assessment, in an amount not to exceed the greater of $25.00 or five percent (5.00%) of each installment of the delinquent assessment, said administrative late fee to be imposed against the delinquent unit owner for each thirty (30) day period that the assessment remains delinquent. Payments made shall be applied to interest and administrative late fees first and then to the delinquent assessment. The Association shall furnish to any Institutional Mort-

-11-

OFF. REC. 16504 PG 3970

gages, upon its request, written notification of any default in assessment payments of the unit owner whose Unit is encumbered by the Institutional Mortgage.

K.   The Association is hereby granted a lien on each Unit, which lien shall secure the payment of all assessments, interest thereon, and reasonable attorneys' fees incurred as an incident to the enforcement of said lien. Notwithstanding anything to the contrary which may be contained herein, no fine shall become a lien against a Unit. The lien shall be effective, have priority and be collected as provided by the Act.

L.   Liens for assessments may be foreclosed by suit brought in the name of the Association in like manner as a foreclosure of a mortgage on real property, as more fully set forth in the Act. The Association may bid at any sale and apply as a cash credit against its bid all sums due the Association covered by the lien being enforced, in any suit for the foreclosure of said lien, the Association, provided the unit owner has remained in possession of the Unit, shall be entitled to petition a court of competent jurisdiction for payment of a reasonable rental from the owner of such Unit from the date on which the payment of any assessment or installment thereof became delinquent, and shall be entitled to the appointment of a receiver for said Unit.

M.   A first mortgagee which acquires title to the Unit by foreclosure or by deed in lieu of foreclosure is liable for the unpaid assessments that became due prior to the mortgagee's acquisition of title to the Unit. However, such mortgagee's liability is limited to a period not exceeding six (6) months, but in no event does the first mortgagee's liability exceed one percent (1.00%) of the original mortgage debt. The first mortgagee's liability for such expenses or assessments does not commence until thirty (30) days after the date the first mortgagee received the last payment of principal or interest. In no event shall the mortgagee be liable for more than six (6) months of the Unit's unpaid common expenses or assessments accrued before the acquisition of the title to the Unit by the mortgagee or one percent (1.00%) of the original mortgage debt, whichever amount is less.

XIV.   **MAINTENANCE GUARANTEE**

During the period commencing with the date of the recordation of this Declaration of Condominium among the Public Records of Dade County, Florida and continuing until the earlier of: (i) one (1) year from the date the Developer (until the date on which control of the Board of Directors of the Association is turned over to unit owners other than the Developer (the "Initial Guarantee Expiration Date"), the Developer shall not be obligated to pay the share of common expenses attributable to the Units that it owns in the Condominium, provided that the regular monthly assessments for common expenses imposed on each unit owner other than the Developer shall not increase during such period (the "Guarantee Period") over the amount set forth in the initial Estimated Operating Budget for the Association, and provided further that the Developer shall be obligated to pay any amount of common expenses actually incurred during the Guarantee Period not produced by the assessments at the guaranteed level. For the purpose of this Article, income to the Association other than assessments (as defined herein and in the Act) shall not be taken into account when determining the Guarantee Period funded by the Developer. Prior to the Initial Guarantee Expiration Date, the Developer shall have the option of extending the Guarantee Period for one (1) or more additional periods, of one (1) year each (an "Additional Guarantee Period") as provided in Florida Statutes, Section 718.116(9). The Developer shall be deemed to have automatically extended the Guarantee Period, by an Additional Guarantee Period, unless the Developer notifies the Board of Directors of the Association in writing, of its election not to extend the Guarantee Period for an Additional Guarantee Period. The Developer may also extend the Guarantee Period for a definite period of time by written agreement

-12-

OFF. 16504PG3971
REC.

entered into with a majority of non-Developer unit owners. No funds received from unit owners payable to the Association or collected by the Developer on behalf of the Association, other than regular periodic assessments for common expenses as provided in the Declaration and as disclosed in the Estimated Operating Budget referred to above, shall be used for the payment of common expenses prior to the then applicable Guarantee Expiration Date. This restriction shall apply to funds including, but not limited to, capital contributions or start-up funds collected from unit owners at the time the unit owners purchase Units in the Condominium from the Developer.

### XV.    LIMITATION OF LIABILITY

A.    The liability of the owner of a Unit for common expenses shall be limited to the amounts for which such unit owner is assessed from time to time in accordance with this Declaration and the By-laws (including any interest, penalties, costs or fees provided for therein in the event of delinquency).

B.    The owner of a Unit may be personally liable for acts or omissions of the Association in relation to the use of the common elements, but only to the extent of such unit owner's pro rata share of that liability in the same percentage as such units owner's interest in the common elements, and then in no event shall such liability exceed the value of the unit owner's Unit.

### XVI.    LIENS

A.    Unless a unit owner has expressly requested or consented to work being performed or materials being furnished to unit owner's Unit, such furnishing of labor or materials may not be the basis for the filing of a mechanic's lien against the unit owner's Unit.  No labor performed or materials furnished to the common elements shall be the basis for the filing of a lien thereon unless authorized by the Association, in which event the same may be the basis for the filing of a lien against all Units in the proportions for which the Units are liable for common expenses.

B.    In the event a lien against two or more Units becomes effective, each unit owner thereof may relieve his Unit of the lien by paying the proportionate amount attributable to unit owner's Unit. Upon such payment, it shall be the duty of the lienor to release the lien of record against such Unit.

### XVII.    EASEMENTS

Each of the following easements is a covenant running with the land of the Condominium, to-wit:

A.    Utility Services; Drainage -- Easements are reserved under, through, across and over the Condominium Property as may be required for utility services and drainage in order to serve the Condominium.  A unit owner shall do nothing within or outside unit owner's Unit that interferes with or impairs the utility services and cable television services using these easements. The Association or its designee shall have a right of access to each Unit to maintain, repair or replace the telephone, electrical and other utility services facilities, and common elements contained in the Unit or elsewhere in the Condominium Property, and to remove any improvements interfering with or impairing the utility services or easements herein reserved; provided that such right of access shall not unreasonably interfere with the unit owner's permitted use of the Unit, and entry shall be made on not less than one day's notice, except in the event of an emergency.

-13-

BK: 16504 PG: 3972

B. **Traffic** -- An easement shall exist for pedestrian traffic over, through and across all sidewalks, driveways, paths, walks, halls, lobbies, elevators, stairs, and other portions of the common elements as may be from time to time intended and designated for such purpose and use; and for vehicular and pedestrian traffic over, through and across such portions of the common elements and limited common elements as may, from time to time, be paved and intended for such purpose; and such easements shall be for the use and benefit of unit owners, lessees, Institutional Mortgagees, and those claiming by, through or under the aforesaid.

C. **Easement for Unintentional and Non-Negligent Encroachments** -- If a Unit shall encroach upon any common element, limited common element or any unit, for any reason of original construction or by reason of the non-negligent or non-purposeful act of the unit owner or the Developer, then an easement appurtenant to such encroaching Unit, to the extent of such encroachment, shall exist so long as such encroachment shall exist. If any common element or limited common element shall encroach upon any Unit by reason of original construction or by reason of the non-purposeful or non-negligent act of the Association or the Developer, then an easement appurtenant to such common element or limited common element, to the extent of such encroachment, shall exist so long as such encroachment shall exist.

D. **Support** -- The Developer and the Association hereby grant to each other and to their respective heirs, successors, and assigns, and to all third party beneficiaries, including unit owners, lessees, guests, invitees, servants and employees, the right of support for all structures on any portion of the real property of the Condominium.

E. **Additional Easements** -- The Association has the right to grant to owners and users of property which is contiguous to the Condominium Property, easements upon, under, over and across the common elements of the Condominium for purposes of use, ingress, egress and access; provided, however, that the recipients of such easements shall pay or cause to be paid, their proportionate portion of the expenses associated with ownership, operation and use of the common elements. In addition, the Association shall have the right to grant such additional electric, telephone, gas or other utility easements, and to relocate any existing easements in any portion of the Condominium Property, and to grant easements and relocate any existing access easements in any portion of the Condominium Property, as the Association shall deem necessary or desirable for the proper operation and maintenance of the improvements, or any portion thereof, or for the general health or welfare of the unit owners, or for the purpose of carrying out any provisions of this Declaration; provided that such easements or the relocation of existing easements will not prevent or unreasonably interfere with the use of the Units for their intended purposes.

F. All easements, of whatever kind or character, whether heretofore or hereafter created, shall constitute a covenant running with the land, shall survive the termination of this Condominium, and, notwithstanding any other provisions of this Declaration, may not be substantially amended or revoked in a way which would unreasonably interfere with the proper and intended use and purpose of any such easement. The unit owners do hereby designate the Association as their lawful attorney-in-fact, coupled with an interest, to execute any and all instruments on their behalf for the purpose of creating all such easements as are contemplated by the provisions hereof.

XVIII. **OBLIGATIONS OF UNIT OWNERS**

In addition to the other obligations and duties heretofore set out in this Declaration, each unit owner shall:

A. Promptly pay all assessments, regular and special, levied by the Association.

-14-

OFF. 16504PG3973
REC.

B. Maintain in good condition and repair unit owner's Unit and the limited common elements appurtenant thereto and maintain and repair the fixtures therein and pay for any utilities which are separately metered to unit owner's Unit.

C. Not permit or suffer anything to be done or kept in unit owner's Unit which will increase the insurance rates on unit owner's Unit, or the common elements, or which will obstruct or interfere with the rights of other unit owners or annoy them by unreasonable noises or otherwise; nor shall a unit owner commit or permit any nuisance or any immoral or illegal act in unit owner's Unit or on the common elements.

D. Conform to and abide by the By-Laws and such rules and regulations which may be adopted in writing, from time to time, by the Board of Directors of the Association and see that all persons using unit owner's Unit by, through or under the unit owner do likewise.

E. Make no alteration, decoration, repair, replacement or change to the common elements or limited common elements, or to any outside or exterior portion of the Condominium, except as set forth herein.

F. Exhibit no sign, advertisement or notice of any type on the common elements, on the limited common elements or on unit owner's Unit except as may be approved by the Association. The prohibitions contained in this subparagraph shall not be applicable to the Developer and/or to agents of the Developer.

G. Make no repairs to any plumbing or electrical wiring, except within a Unit. Plumbing and electrical repairs within a Unit shall be the financial obligation of the owner of the Unit and shall be paid for forthwith. The Association shall pay for and be responsible for plumbing repairs and electrical wiring within the common elements.

H. Return the "Unit" for the purpose of ad valorem taxes to the respective taxing authorities having jurisdiction over them for separate assessment against unit owner's Unit. For the purposes of ad valorem taxation, the interest of the unit owner in unit owner's Unit and in the limited common elements and common elements appurtenant thereto shall be considered as a Unit.

XIX.    INSURANCE

A. Liability Insurance -- The Board of Directors of the Association shall utilize due diligence to obtain public liability insurance, directors' and officers' liability insurance and property damage insurance covering all real property owned by the Association and all of the common elements of the Condominium (not including floor coverings), wall coverings or ceiling coverings), and insuring the Association, all unit owners and all Institutional Mortgagees, as it and their interests may appear, in such amounts as the Board of Directors may determine from time to time, provided that the minimum amount of coverage shall, to the extent such coverage is available, be at least $1,000,000.00 per occurrence combined single limit bodily injury and property damage. Said insurance coverage shall include, but not be limited to, water damage, legal liability, hired automobile, non-owned automobile and all premises and operations. All liability insurance shall contain a cross-liability endorsement to cover the liability of the unit owners, as a group, to any one unit owner. Premiums for the payment of such insurance shall be paid by the Association and charged as a common expense.

B. Casualty Insurance - Purchase of Insurance -- The Association shall obtain "all risk" insurance, flood insurance and vandalism and malicious mischief insurance, insuring all of the insurable improvements within the Condominium (except for floor

-15-

BREGDW, KORN, KAN & GLASER, P.A., 20803 BISCAYNE BOULEVARD, SUITE 200, P.O. BOX 2020, HALLANDALE, FL 33008 · (305) 931-6666

OFF.
REC. 16504 PG 3974

coverings, wall coverings and/or ceiling coverings), including personal property owned by the Association, in and for the interest of the Association, all unit owners and Institutional Mortgagees, as their interests may appear, with a company acceptable to the standards set by the Board of Directors of the Association, in an amount equal to the maximum insurable replacement value, as determined annually. The premiums for such coverage and other expenses in connection with said insurance placement shall be paid by the Association and charged as a common expense. The company or companies with whom the Association shall place its insurance coverage, as provided in this Declaration, must be good and responsible companies, authorized to do business in the State of Florida. Insurance shall be obtained from companies whose ratings meet the financial and policy holder's standards of the Institutional Mortgagees having the highest dollar value of mortgages encumbering Units in the Condominium, which Institutional Mortgagee shall also have the right to approve the amounts of insurance coverage and the forms utilized by the insurance company furnishing the insurance.

C. Loss Payable Provisions -- Insurance Trustee. -- All policies purchased by the Association shall be for the benefit of the Association, all unit owners and their mortgagees, as their interests may appear. Said policies shall provide that all insurance proceeds payable on account of loss or damage shall be payable to any banking institution having trust powers and doing business in the State of Florida (the "Insurance Trustee"). The Insurance Trustee shall not be liable for the payment of premiums, nor for the renewal or the sufficiency of policies, nor for the failure to collect any insurance proceeds, nor for the form or content of the policies. The sole duty of the Insurance Trustee shall be to receive such proceeds as are paid and to hold the same in trust for the purposes elsewhere stated herein, and for the benefit of the Association, the unit owners and their respective mortgagees (sometimes hereinafter collectively referred to as the "beneficial owners"), in the following shares, but such shares need not be set forth upon the records of the Insurance Trustee:

1. Common Elements -- Proceeds on account of damage to common elements shall be an undivided share for each unit owner, such share being the same as the undivided share in the common elements appurtenant to unit owner's Unit.

2. Units -- Proceeds on account of Units shall be in the following undivided shares:

a. Partial destruction, when Units are to be repaired and restored for the owners of the damaged Units, in proportion to the cost of repairing the damage suffered by each unit owner.

b. Total destruction of Condominium improvements, or where "very substantial" damage occurs and the Condominium improvements are not to be restored, as provided hereafter in this Article for the owners of all Units, each unit owner's share being in proportion to unit owner's share in the common elements appurtenant to unit owner's Unit.

3. Mortgagees -- In the event an Institutional Mortgage encumbers a Unit, the share of the unit owner shall be held in trust for the particular Institutional Mortgagee and the unit owner, as their interests may appear; provided, however, that no mortgagee, other than the Institutional Mortgagee having the highest dollar indebtedness secured by mortgages encumbering Units in the Condominium, shall have any right to determine or participate in the determination as to whether or not any damaged property shall be reconstructed or repaired.

D. Distribution of Proceeds -- Proceeds of insurance policies received by the Insurance Trustee shall be distributed to or for the benefit of the beneficial owners and expended or disbursed after first paying or making provision for the payment of the expenses of the Insurance Trustee, in the following manner:

-16-

OFF.
REG. 16504PG3975

1. <u>Reconstruction or Repair</u> -- If the damage for which the proceeds were paid are to be repaired and restored, the proceeds shall be paid to defray the cost thereof, as elsewhere provided. Any proceeds remaining after defraying such costs shall be distributed to the beneficial owners, all remittances to unit owners and their mortgagees being payable jointly to them. This is a covenant for the benefit of any mortgagee of a Unit and may be enforced by any mortgagee. Said remittance shall be made solely to an Institutional Mortgagee, when requested by such Institutional Mortgagee, whose mortgage provides that it has the right to require application of the insurance proceeds to the payment or reduction of its mortgage debt.

2. <u>Failure to Reconstruct or Repair</u> -- If the damage for which the proceeds were paid shall not be repaired and restored, any proceeds remaining after defraying such costs shall be distributed to the beneficial owners, all remittances to unit owners and their mortgagees being payable jointly to them. This is a covenant for the benefit of any mortgagee of a Unit and may be enforced by any mortgagee. Said remittance shall be made solely to an Institutional Mortgagee, when requested by such Institutional Mortgagee, whose mortgage provides that it has the right to require application of the insurance proceeds to the payment or reduction of its mortgage debt. In the event of the loss or damage to personal property belonging to the Association, and should the Board of Directors of the Association determine not to replace such personal property, as may be lost or damaged, the proceeds shall be disbursed to the beneficial owners as surplus in the manner elsewhere stated.

3. <u>Certificate</u> -- In making distribution to unit owners and their mortgagees, the Insurance Trustee may rely upon a certificate of the Association, executed by the President (or Vice-President) and Secretary of the Association, as to the names of the unit owners and their respective shares of distribution. Upon request of the Insurance Trustee, the Association forthwith shall deliver such certificate. In addition, the Insurance Trustee may rely on such certificate as to whether or not the damaged property is to be repaired and restored and as to the payee and the amount to be paid from said proceeds.

E. <u>Loss Within a Single Unit</u> -- If loss shall occur within a single Unit or Units, without damage to the common elements, the insurance proceeds shall be distributed to the affected unit owner(s), remittance by the Insurance Trustee to unit owners and their mortgagees being payable jointly to them. This is a covenant for the benefit of any mortgagee of a Unit and may be enforced by any mortgagee. Said remittance shall be made solely to an Institutional Mortgagee, when requested by such Institutional Mortgagee, whose mortgage provides that it has the right to require application of the insurance proceeds to the payment or reduction of its mortgage debt. The unit owner shall thereupon be fully responsible for the restoration of the Unit.

F. <u>Loss Less Than "Very Substantial"</u> -- Where a loss or damage occurs to more than one Unit and/or to the common elements, or any Unit or Units and the common elements, but said loss is less than "very substantial" (as hereinafter defined), it shall be obligatory upon the Association and the unit owners to repair, restore and rebuild the damage caused by said loss. Where such loss or damage is less than "very substantial":

1. The Board of Directors of the Association shall promptly obtain reliable and detailed estimates of the cost of repairing and restoration.

2. If the damage or loss is limited to the common elements, with minimum of no danger or loss to any individual Unit, and if such damage or loss to the common elements is less than $3,000.00, the insurance proceeds shall be endorsed by the Insurance Trustee over

-17-

GESDOW, KEER, KEAN & OLSEN, P.S. 7880 ВЕСАМЕ ВОULEVARD, SUITE 202, 1812 ... 82812, ...

OFF.
REC. 16504PG3976

to the Association, and the Association shall promptly contract for the repair and restoration of the damage.

3. If the damage or loss involves individual Units encumbered by Institutional Mortgagees, as well as to the common elements, or if the damage is limited to the common elements alone but is in excess of $3,000.00, the insurance proceeds shall be disbursed by the Insurance Trustee for the repair and restoration of the property upon the written direction and approval of the Association, provided, however, that upon the request of an Institutional Mortgagee, the written approval shall also be required of the Institutional Mortgagee having the highest dollar indebtedness secured by mortgages encumbering Units in the Condominium. Should written approval be required, as aforesaid, it shall be the duty of the Institutional Mortgagee to give written notice thereof to the Insurance Trustee. The Insurance Trustee may rely upon the certificate of the Association and the aforesaid Institutional Mortgagee, if said Institutional Mortgagee's written approval is required, as to the payee and the amount to be paid from said proceeds. All such Trustee shall deliver paid bills and waivers of mechanic's liens to the Insurance Trustee and execute any affidavit required by law or by the Association or by the aforesaid Institutional Mortgagee. In addition to the foregoing, the Institutional Mortgagee whose approval may be required, as aforedescribed, shall have the right to require the general contractor performing the reconstruction to obtain a performance and payment bond in an amount and with a bonding company authorized to do business in the State of Florida, which are acceptable to said mortgagee.

4. Subject to the foregoing, the Board of Directors of the Association shall have the right and obligation to negotiate and contract for the repair and restoration of the Condominium Property.

5. If the net proceeds of the insurance are insufficient to pay for the estimated cost of restoration and repair (or for the actual cost thereof if the work has actually been done) by the Board of Directors shall promptly, upon determination of the deficiency, levy a special assessment against all Units in proportion to each Unit's share in the common elements (regardless of whether all of the common elements are affected) for that portion of the deficiency as is attributable to the cost of restoration of the common elements and against the individual Unit(s) for that portion of the deficiency as is attributable to a particular Unit or to particular Units; provided, however, that if the Board of Directors finds that it cannot determine which reasonable certainty the portion of the deficiency attributable to specific individual Units, then the Board of Directors shall levy the assessment for the total deficiency against all of the Units in proportion to each Unit's share in the common elements. Just as though all of said damage had occurred in the common elements. The special assessment funds shall be delivered by the Association to the Insurance Trustee and shall be added by the Insurance Trustee to the proceeds available for the repair and restoration of the Condominium Property.

6. In the event the insurance proceeds are sufficient to pay for the cost of restoration and repair, or in the event the insurance proceeds are insufficient but additional funds are raised by special assessments within ninety (90) days after the casualty, so that sufficient funds are on hand to fully pay for such restoration and repair, then no mortgagee shall have the right to require the application of insurance proceeds to the payment of its mortgage; provided however, that this provision may be waived by the Board of Directors in favor of any Institutional Mortgagee upon request therefor at any time.

G. "Very Substantial Damage -- As used in this Declaration, or in any other context dealing with this Condominium, the term "very

-18-

BEHZON, KOHN, KAN & GLASER, P.A.    SOUTH BISCAYNE BOULEVARD, SUITE 210, AVIS MIAMI, FLORIDA 33137

OFF.
REC. 16504 PG 3977

substantial" damage shall mean loss or damage whereby 75% or more of the total unit space is rendered untenantable, in the sole discretion of the Board of Directors, or loss or damage whereby 75% or more of the total amount of insurance coverage placed becomes payable. Should such "very substantial" damage occur, then:

1. The Board of Directors of the Association shall promptly obtain reliable and detailed estimates of the cost of repair and restoration thereof and the net amount of insurance proceeds available for restoration and repair.

2. Thereupon, a special meeting of the members of the Association shall be called by the Board of Directors of the Association, to be held not later than 60 days after the casualty, to determine the wishes of the members of the Association with reference to abandonment of the Condominium project, subject to the following:

a. If the net insurance proceeds available for restoration and repair, together with the funds advanced by unit owners to replace insurance proceeds paid over to Institutional Mortgagees, are sufficient to cover the cost thereof, so that no special assessment is required, then the Condominium Property shall be restored and repaired, unless members holding not less than 66-2/3% of the total votes of the Association shall vote to abandon the Condominium project, in which event the Condominium Property shall be removed from the provisions of the Act, in accordance with Section 718.117 of the Act.

b. If the net insurance proceeds available for restoration and repair, together with funds advanced by unit owners to replace insurance proceeds paid over to Institutional Mortgagees, are not sufficient to cover the cost thereof, so that a special assessment will be required, then, if members holding in excess of 33-1/3% of the total votes of the Association vote against such special assessment, the Condominium shall be abandoned and the Condominium Property shall be removed from the provisions of the Act, in accordance with Section 718.117 of the Act. In the event members holding not less than 66-2/3% of the total votes of the Association vote in favor of a special assessment to make such repairs, the Association shall immediately levy such special assessment and, thereupon, the Association shall proceed to negotiate and contract for such repairs. The special assessment funds shall be delivered by the Association to the Insurance Trustee and shall be added by said Insurance Trustee to the proceeds available for the repair and restoration of the Condominium Property. The proceeds shall be disbursed by the Insurance Trustee for the repair and restoration. To the extent that any insurance proceeds are paid over to any mortgagee, and in the event it is determined not to abandon the Condominium Project and to levy a special assessment, then the affected unit owner shall be obligated to replenish such funds so paid over to the unit owner's mortgagee, and said unit owner and his Unit shall be subject to special assessment for such sum.

c. In the event any dispute shall arise as to whether or not "very substantial" damage has occurred, it is agreed that a determination made by the Board of Directors of the Association shall be binding upon all unit owners.

H. Surplus -- It shall be presumed that the first monies disbursed in payment of costs of repair and restoration shall be from the insurance proceeds; and, if there is a balance remaining in the funds held by the Insurance Trustee after the payment of all costs of the repair and restoration, such balance may be retained as a reserve, or wholly or partly distributed, at the discretion of the Board of Directors of the Association, unless the Institutional Mortgagee having the highest dollar indebtedness secured by mortgages encumbering units in the Condominium shall require distribution. In the event of distribution, then the Insurance Trustee shall distribute any such balance to the beneficial owners of the fund in the manner elsewhere stated.

-19-

BERDZON, KORN, KAN & GLASER, P.A., 20803 BISCAYNE BOULEVARD, SUITE 200, P.O. BOX 6020, HALLANDALE, FLORIDA, (305) WH-GLASER

OFF. 16504PG3978
REC.

I. **Plans and Specifications** -- Any repair and restoration must be substantially in accordance with the plans and specifications for the original building, or as the building was last constructed, or according to the plans approved by the Board of Directors of the Association, which approval shall not be unreasonably withheld. If any material or substantial change is contemplated, the approval of all Institutional Mortgagees shall also be required. The Insurance Trustee shall not be obligated or required to inquire into or determine any matters concerning the plans or specifications of any repairs, restoration or rebuilding.

J. **Association's Power to Compromise Claim** -- The Association is hereby irrevocably appointed agent for each unit owner for the purpose of compromising and settling claims arising under insurance policies purchased by the Association, and to execute and deliver releases therefor upon the payment of claims.

K. To the extent available, a workmen's compensation policy shall be obtained by the Association to meet the requirements of law. Such policy shall have a minimum of $500,000.00 Employer's liability Coverage. In addition, the Association shall obtain such other insurance coverages as the Association shall reasonably determine is necessary for the unit owners and the Condominium.

L. Each individual unit owner shall purchase at unit owner's expense, liability insurance to cover accidents occurring within unit owner's Unit, and such insurance upon unit owner's personal property and such insurance, where applicable, shall contain waiver of subrogation, if available.

M. If available, and where applicable, the Association shall endeavor to obtain policies which provide that the insurance company waives its right of subrogation as to any claims against unit owners, the Association and their respective servants agents and guests. Each unit owner and the Association hereby agrees to waive any claim against each other and against other unit owners for loss or damage for which insurance hereunder is carried, to the extent that the coverage is adequate to compensate for the loss, where the insurer has waived its rights of subrogation as aforesaid.

XX.    **EMINENT DOMAIN OR CONDEMNATION PROCEEDINGS**

If eminent domain or condemnation proceedings are successfully litigated against all or any part of the Condominium Property, the entire eminent domain or condemnation award is to be secured to the Association for the use and benefit of unit owners and their mortgagees as their interests may appear, in accordance with the percentage of ownership of the common elements herein provided. Each unit owner, by acceptance of a deed of conveyance, acknowledges that the Association may act as attorney-in-fact, for each unit owner in any such eminent domain or condemnation proceeding and in negotiations, settlements and agreements with the appropriate governmental condemning authority. The Association shall give prompt written notice to each unit owner and to each holder of a mortgage of record of any such eminent domain or condemnation proceeding, and shall take no action in any such proceedings that will disturb any mortgagee's lien priority.

-20-

HOZDOW, KONN, KAN & GLASIN, P.A., 20803 BISCAYNE BOULEVARD, SUITE 200, P.O. BOX 6020, HALLANDALE, FL 33008 · (305) 935-6688

OFF. 16504#3979

## XXI.    RULES AND REGULATIONS

A.    The Board of Directors may, by a 66-2/3% vote, from time to time, adopt or amend previously adopted administrative rules and regulations governing the details of the operation, use, maintenance and control of the common elements of the Condominium and any facilities or services made available to the unit owners. The Board of Directors shall, from time to time, post at a conspicuous place on the Condominium Property, a copy of the rules and regulations adopted, from time to time, by the Board of Directors.

B.    As to Units -- The Board of Directors may, a 66-2/3% vote, from time to time adopt or amend previously adopted rules and regulations governing and restricting the use and maintenance of the Unit(s) provided, however, that copies of such rules and regulations are furnished to each unit owner prior to the time the same become effective, and where applicable or desirable, copies thereof shall be posted at a conspicuous place on the Condominium Property.

C.    Rules and Regulations -- All rules and regulations adopted by the Board of Directors shall be deemed in effect until amended by the Board of Directors, and shall apply to and be binding upon all unit owners. The unit owners shall, at all times, obey said rules and regulations and shall use their best efforts to see that they are faithfully observed by their families, guests, invitees, servants and lessees. In order to change, amend or vary old or present rules and regulations and/or adopt new rules and regulations, the same shall be duly passed by at least a 66-2/3% vote or consent of the Board of Directors; however, a vote of the membership shall be required. A change, amendment or adoption of a rule and regulation shall not require an amendment to the Declaration of Condominium or of the By-Laws unless such change, amendment or adoption of a rule and regulation would conflict, in any manner, with any provision of this Declaration and/or the By-Laws. The rules and regulations in effect as of the date of this Declaration are attached hereto as Exhibit "F".

## XXII.    MAINTENANCE CONTRACTS

If there shall become available to the Association a contract service for pest control and/or for appliance maintenance and/or for air-conditioning compressor maintenance and/or for any other services which may be the subject of a maintenance contract, which the Association determines is for the benefit of the unit owners to consider, then, by resolution of the members of the Association, by a majority of the votes of those members voting at a special meeting of the members of the Association at which a quorum is present or by a majority of the total votes of the members of the Association, in writing, the Association may enter into such contractual undertakings. The expenses of such contractual undertakings of the Association shall be a common expense. If, on the other hand, the members of the Association determine that the program may be undertaken by the Association in for the benefit of only those unit owners who elect to be included in the program, then the Association may undertake the program without consent of the members of the Association being required as aforesaid, and the costs of such contractual undertakings shall be borne exclusively by the unit owners electing to be included in the program, and shall not be a common expense of the Association, but the Association may arrange for the collection of the contract costs from the individual unit owners electing to be included therein, may execute the contractual undertaking involved upon such terms and conditions as the Association deems proper and require from the unit owners electing to be included, such written undertakings as the Association shall deem proper, to evidence the said unit owners' obligations to the Association for their proportionate share of the costs of such program.

-21-

BERZON, KORN, KAN & GLASER, P.A. 20803 BISCAYNE BOULEVARD, SUITE 302, AVENTURA, FLORIDA 33180 (305) 931-8060

OFF.
REC. 16504 PG 3980

XXIII.    MANAGEMENT AGREEMENTS

A.    The Board of Directors of the Association may enter into a contract with any firm, person or corporation in contracting for the management, maintenance and repair of the Condominium Property. However, the Association shall, at all times, retain the powers and duties to be exercised by or under the authority of the Board of Directors.

B.    The Association and each unit owner, and their respective heirs, successors and assigns, shall be bound by any such management agreement to the same extent as if he or she or it had executed any such management agreement and shall be deemed to have:

1.    Consented to the execution of any such management agreement by the Association; and

2.    Covenanted and promised to perform each and every one of the covenants, promises and undertakings to be performed by unit owners and the Association as provided in any such management agreement; and

3.    Ratified, confirmed and approved each and every provision of any such management agreement and acknowledged that all of the terms and provisions contained therein are fair and reasonable; and

4.    Agreed that the persons acting as Directors and Officers of the Association entering into any such management agreement have not breached any of their duties or obligations to the Association.

XXIV.    TERMINATION OF CONDOMINIUM

The Condominium may be terminated in the following manner:

A.    Destruction -- if it is determined in the manner provided in Article XIX that the Condominium Property shall not be constructed, the Condominium will be terminated.

B.    Agreement -- As provided in Section 718.117 of the Act, the Condominium may be terminated at any time by the approval in writing of all unit owners and all record owners of mortgages encumbering Units.

If the proposed termination is submitted to a special meeting of the members of the Association and if the approval of the members holding not less than 75% of the total votes of the Association and their mortgagees is obtained, in writing, then not later than sixty (60) days from the date of such special meeting, the approving unit owners (through the Association) shall have an option to buy all of the Units of the disapproving unit owners for the period of 120 days from the date of such special meeting. The vote of those unit owners approving the termination shall be irrevocable until the expiration of the option. Any unit owner voting in favor of termination, or not voting, may within fifteen (15) days from the date the vote was taken, change or cast his vote in favor of termination by delivering written notification thereof to the Secretary of the Association. The option shall be exercised upon the following terms:

1.    Exercise of Option -- The option shall be exercised by delivery, or the mailing by registered mail, of an agreement to purchase, signed by the President or Vice President of the Association, to each of the unit owners. The agreement shall be conditioned upon the purchase of all Units owned by unit owners not approving the termination.

2.    Price -- The sales price for each Unit shall be the fair market value as determined between the Seller and the Association. In the absence of agreement on the sales price of any Unit, the sales

-22-

BEDZOW, KORN, KAN & GLASER, P.A. 23665 BISCAYNE BOULEVARD, SUITE 302, NORTH MIAMI BEACH, FLORIDA 33160

OFF.
REC. 16504PG3981

price shall be determined by an appraiser appointed by the Chairman of the Dade County Board of Realtors or its equivalent. A judgment of specific performance of the sale at the sales price determined by the appraiser, may be entered in any court of competent jurisdiction.

3.   **Payment** -- The purchase price shall be paid in cash.

4.   **Form** -- The contract shall be in the form of the Standard Deposit Receipt and Contract for Sale and Purchase then in use in Dade County, Florida.

5.   The sale of all Units shall be closed simultaneously and within thirty (30) days following the determination of the sales price of the last Unit to be purchased.

C.   **Certificate** -- The termination of the Condominium in either of the foregoing manners shall be evidenced by a certificate of the Association, executed by its President (or Vice-President) and Secretary, certifying the fact of the termination, which shall become effective upon the certificate being recorded in the Public Records of Dade County, Florida.

D.   **Shares of Owners After Termination** -- After termination of the Condominium, the unit owners shall own the Condominium Property and all assets of the Association applicable to this Condominium as tenants in common of undivided shares that shall be equal to the sum of the undivided shares in the common elements appurtenant to the Units prior to termination, so that the sum total of the ownership shall equal 100%.

XXV.   **ASSIGNABILITY OF RIGHTS OF DEVELOPER**

The rights and privileges reserved in this Declaration of Condominium and in the Exhibits attached hereto in favor of the Developer are freely assignable, in whole or in part and without the necessity for any consideration being paid to the Association or to any of the other unit owners in this Condominium, by the Developer to any party who may be hereafter designated by the Developer to have and exercise such rights, and such rights may be exercised by the nominee, assignee or designee of the Developer and/or may be exercised by the successor or successors-in-interest of the Developer and/or by the designees of the Developer and/or by grantees from the Developer (including mortgagees accepting deeds from the Developer in lieu of foreclosure) and/or by successors in title to the Developer through mortgage foreclosure.

XXVI.   **EXECUTION OF DOCUMENTS REQUIRED BY THE CITY OF MIAMI AND/OR THE COUNTY OF DADE AND/OR THE STATE OF FLORIDA**

The Developer's plan for the development of this Condominium may require from time to time, the execution of certain documents required by the City of Miami and/or the County of Dade and/or the State of Florida including, but not limited to, easements and restrictive covenants affecting the Condominium Property. To the extent that said documents require the joinder of any or all of the unit owners in this Condominium, each of said unit owners does hereby irrevocably give and grant to the Developer, or its officers, individually, full power-of-attorney to execute said documents as such unit owner's agent and in his place and stead. The Association and each unit owner in this Condominium, by acceptance of the deed of conveyance transferring title to his unit, shall be deemed to have assumed each and every one of the obligations of the Developer regarding the maintenance of the Condominium Property, if any, arising by virtue of the execution of documents required by the City of Miami and/or the County of Dade and/or by the State of Florida.

-23-

BEDZOW, KORN, KAN & GLASER, P.A., 23035 BISCAYNE BOULEVARD, SUITE 200, AVENTURA, FLORIDA

BK. 15504PG3982
REC.

XXVII.   DEVELOPER'S RIGHT TO AMEND DECLARATION OF CONDOMINIUM

Developer shall have the right to amend the Declaration of Condominium, with the approval of a majority of the total votes of the Association to:

A.   Make alterations, additions or improvements in, to and upon Units owned by the Developer, whether structural or non-structural, interior or exterior, ordinary or extraordinary.

B.   Change the layout or number of rooms in any Developer-owned Units.

C.   Change the size and/or number of Developer-owned Units by combining separate Developer-owned Units into one or more Units, or otherwise.

D.   Reapportion among Developer-owned Units affected by such change in size, pursuant to the preceding clause, their appurtenant interests in the common elements, their appurtenant shares of ownership of the common surplus and their appurtenant shares of the common expenses; provided, however, that the percentage interest in the common elements allocated to each Unit (other than Developer-owned Units) shall not be changed by reason thereof unless the owners of such Units) and all record owners of mortgages thereon, shall consent thereto and provided further that the Developer shall comply with all laws, ordinances and regulations of all governmental authorities having jurisdiction.

XXVIII.   PETS

No pets or animals weighing in excess of twenty (20) pounds or any type of exotic pet or exotic animal shall be kept or harbored on the Condominium property without the consent of the Board of Directors and within the confines of a Unit, without the prior written consent of the Association. Such consent may be given upon such conditions as the Board of Directors may direct, in the sole discretion of the Board of Directors, shall be only for the particular pet specified in the consent and shall be deemed provisional and subject to revocation at any time. Pets must be hard carried at all times when not within the Unit. No pet or animal shall be maintained or harbored within a Unit that would be a nuisance to any other unit owner or lessee. A determination by the Board of Directors that a pet or animal maintained or harbored within a Unit creates a nuisance or is exotic shall be binding and conclusive on all parties.

XXIX.   CONDOMINIUM WORKING CAPITAL FUND

At the time the Developer closes upon the sale of a Unit to a purchaser (purchaser thereby becoming a unit owner in the Condominium), the purchaser shall deposit with the Association an amount equal to two (2) monthly installments of the common expenses assessed to the purchaser's Unit. This sum shall be deposited into a working capital account ("Condominium Working Capital Fund") for the purpose of having funds available for initial and non-recurring items, capital expenses, permit fees, licenses, utility deposits and advance premiums for insurance policies, covering the Condominium. Under this Declaration and the Exhibits attached hereto. The Condominium Working Capital Fund may be commingled by the Association with any of its other funds. In no event shall the Developer receive reimbursement, from the Condominium Working Capital Fund, for those expenses which it is obligated to pay pursuant to the provisions of Article XIV hereinabove and Section 718.116(9) (a) of the Act.

-24-

RC.16504 PG 3903

XXX.    CONVEYANCES, SALES, RENTALS, LEASES AND TRANSFERS

In order to insure a community of congenial residents and occupants and to protect the value of the Units and to further the continuous, harmonious development of the Condominium community, the sale, leasing, rental and transfer of Units shall be subject to the following provisions:

A.    Prior to the sale, conveyance or transfer of any Unit to any other person, the unit owner shall notify the Board of Directors of the Association, in writing, of the name and address of the person to whom the proposed sale, conveyance or transfer is to be made and furnish such other information as may be required by the Board of Directors so that the Association. Within fifteen (15) days from the date of receipt of said notification, the Board of Directors of the Association shall either approve or disapprove the proposed sale, transfer or conveyance, in writing, and shall notify the unit owner of its decision. In the event the Board of Directors shall fail to approve or disapprove the proposed sale, conveyance within said fifteen (15) days, however, the failure to act as aforesaid shall be considered an approval of the sale.

An affidavit of the Secretary of the Association stating that the Board of Directors has approved in all respects, on a certain date, the sale or transfer of a Unit to certain persons, shall be conclusive evidence of such fact.

An affidavit of the Secretary of the Association stating that the Board of Directors was given proper notice on a certain date of a proposed sale or transfer and that the Board of Directors disapproved or failed to act on such proposed sale or transfer, and that thereafter all the provisions hereof which constitute conditions precedent to a sale or transfer of a Unit have been complied with, so that the sale or transfer of a particular Unit to particularly named persons does not violate the provisions hereof, shall be conclusive evidence of such facts for the purpose of determining the status of the persons to whom such Unit is sold or transferred.

B.    The Board of Directors shall have the right to require that a substantially uniform form of lease be used. No lease may be made for less than six (6) month consecutive period without the prior written approval of the Board of Directors of the Association and no transient accomodations shall be provided.

Notwithstanding the foregoing, a unit owner may, from time to time, permit guests to occupy his Unit, in his absence and without consideration, for periods not exceeding thirty (30) days in any one (1) calendar year.

C.    The Association shall have the right to refuse to give written approval to any sale or transfer until all assessments owed with respect to the particular Unit are paid, in full.

D.    If the proposed purchaser is a corporation or a partnership, the approval may be conditioned upon the approval by the Association of all occupants of the Unit.

E.    In the case of the death of the owner of a Unit, the surviving spouse, if any, and if any surviving spouse, the other members of such unit owner's family residing with the unit owner at the time of the unit owner's death, may continue to use the Unit and if such surviving spouse or other member or members of the deceased unit owner's family shall have succeeded to the ownership of the Unit, the ownership thereof shall be transferred by legal process to such new owner. In the event said decedent shall have conveyed or bequeathed the ownership of the decedent's Unit to some designated person or persons other than the surviving spouse or members of the decedent's family, as aforedescribed, or if some other person is designated by such descendent's legal representative to receive the ownership of the Unit, or if under the

-25-

OFF. REC. 16504 PG 3984

laws of descent and distribution of the State of Florida, the Unit descend to some person or persons other than the unit owner's surviving members or the decedent's family aforedescribed, the Board of Directors of the Association shall within thirty (30) days o receipt of proper evidence of designation served upon the President o the Association, or within thirty (30) days from the date th Association is placed on actual notice of the said devisee o descendant, express its refusal or acceptance of the individual o individuals so designated as owners of the Unit. If the Board o Directors of the Association shall consent, ownership of a Unit may b transferred to the person or persons so designated, who shall thereupo become the owner of the Unit, subject to the provisions of thi Declaration and the By-Laws of the Association, and, however, the Boar of Directors of the Association shall refuse to consent, then the Unit owners shall be given an opportunity, during the 30 days next after suc last abovementioned 30 days, to purchase or to furnish a purchaser, fo cash, for the said Unit, the purchase price to be determined by a appraiser appointed by a senior judge of the Circuit Court in and fo Dade County, Florida, upon 10 days' notice, on petition of any party i interest. The expense of appraisal shall be paid by the said designate person or persons or the legal representative of the deceased unit owne out of the amount realized from the sale of said Unit. In the event n unit owner exercises the privilege of purchasing or furnishing purchaser within such period, and upon such terms, th person or persons so designated may take title to the Unit or suc person or persons or the legal representative of the deceased unit owne may sell the said Unit, but such sale shall be subject in all othe respects to the provisions of this Declaration and the By-Laws of the Association.

F.    Any sale or lease not authorized pursuant to the terms of this Declaration shall be void unless subsequently approved by the Association.

G.    There shall be deposited and delivered to the Association a reasonable screening fee not to exceed $50.00, simultaneously with the giving of notice of the intention to sell for the purpose of defraying the Association's expenses.   It is understood that no fee shall be charged in connection with a transfer or approval in excess of the expenditures reasonably required and that no charge shall be made in connection with an extension or renewal of a lease or sublease.

H.    The foregoing provisions of this Article XXX shall not be applicable to transfers of Units by a unit owner to any member of the unit owner's immediate family (i.e., spouse, children or parents) or, if a Unit is owned by a form of co-tenancy, to transfers of Units from one co-tenant to another co-tenant.   The foregoing provisions of this Article XXX shall also not be applicable to transfers of Units from a trustee to its beneficiary or from a beneficiary to his trustee.

I.    No judicial sale of a Unit or any interest therein shall be valid unless:

1.    The sale is to a purchaser approved by the Association, which approval shall be in recordable form; or

2.    The sale is the result of a public sale with open bidding.

J.    The Board of Directors of the Association shall have the right to withhold consent and approval of any prospective sale, trans- fer, conveyance, bequest, devise or otherwise in the event the prospective unit owner, by being such a unit owner, would automatically violate or breach a term, condition, restriction, rule, regulation or covenant under this Declaration or the Exhibits attached thereto.

K.    The Association and its agents or employees shall not be liable to any person whomsoever for the approving or disapproving of any

-26-

BOZOVIC, KONN, KAN & CLARIN, P.A., 20803 BISCAYNE BOULEVARD, SUITE 200, P.O. BOX 800, HALLANDALE, FLORIDA, (305) 493-1161

OFF. 16504PG3985
REC.

person pursuant to this Article XXX, or for the method or manner of conducting the investigation. The Association and its agents or employees shall not be required to specify any reason for approval or disapproval.

L. The foregoing provisions of this Article XXX shall not be applicable to transfers or purchases by an Institutional Mortgagee (and/or its assignee or nominee) that acquires its title as a result of owning a mortgage encumbering the Unit concerned, and this shall be so whether the title is acquired by deed from the mortgagor, mortgagor's sucessors or assigns, or through foreclosure proceedings, nor shall such provisions apply to a transfer or sale by an Institutional Mortgagee (and/or its assignee or nominee) that so acquires its title. The purchaser at any foreclosure sale shall not apply to the Developer or to the assignee or nominee of the Developer and any such person or corporation shall have the right to freely sell, transfer or otherwise deal with the title and possession of a Unit without being obligated to comply with the provisions of this Article XXX, and without being obligated to obtain the approval of the Association and without the necessity for payment of any greening fees except that Developer shall be subject to the restrictions upon leasing or rental of the Units in this Condominium, as set forth in Paragraph B of this Article.

## XXXI. REMEDIES

A. Relief -- Each unit owner and the Association shall be governed by and shall comply with the provisions of this Declaration as they may exist from time to time. A violation thereof shall entitle the appropriate party to institute an action to recover sums due for damages, injunctive relief, foreclosure of lien or any combination thereof, and any other action available pursuant to the Act or law. Suit may be brought by the Association or, if appropriate, by one or more unit owners and the prevailing party shall be entitled to recover reasonable attorneys' fees. Each unit owner acknowledges that the failure to comply with any of the provisions of this Declaration shall or may constitute an injury to the Association or to other unit owners and that such injury may be irreparable.

B. Costs and Attorneys' Fees -- In any proceeding arising because of an alleged default, act, failure to act, or violation by the unit owner or the Association, including the enforcement of any lien granted pursuant to the Declaration or its Exhibits, the prevailing party shall be entitled to recover the costs of the proceeding, including reasonable attorneys' fees. Further, in the event that proceedings are instituted by or against the Developer or against any affiliated entity of the Developer or against any individual connected with the Developer (including, but not limited to, the parent company of the Developer and/or any subsidiary of the Developer and/or any subsidiary of either of the general partners of the Developer and/or the initial directors of the Association) for any reason whatsoever, including but not limited to: (i) actions for declaratory judgment, (ii) any claim that any of the above have not complied with their obligations under the Prospectus or this Condominium, this Declaration and its Exhibits, or (iii) that any provision of the same is unconscionable or violates any State or Federal Law or regulation, then the prevailing party shall be entitled to recover all costs of the proceeding. Said recoverable costs shall include, but are not limited to, reasonable attorneys' fees at all levels of the proceeding, including appeals, together with all costs including those not normally allowed in actions at law such as but not limited to copies of depositions and other documentation and exhibits, whether or not used at trial, travel expenses for consultants and/or witnesses for the purpose of testifying at trial or deposition, consultants fees, expert witness fees, together with such costs, together with such additional fees as the expert witness may charge in connection with his preparation for giving such testimony at deposition or at trial whether or not the witness shall actually appear or be called upon to testify.

-27-

OFF. 16504PG3986
REC:

C.  No Waiver -- The failure of the Association, the Developer or unit owners to enforce any right, provision, covenant or condition created or granted by this Declaration, the Act, the Articles of Incorporation, the By-Laws and/or any rules and regulations adopted with respect to any portion of the Condominium Property, shall not constitute a waiver of the right of said party to enforce such right, provision, covenant or condition in the future.

D.  Rights Cumulative -- All rights, remedies and privileges granted to the Association, the Developer and unit owners pursuant to the provisions of this Declaration shall be deemed to be cumulative and the exercise of any one or more shall not be deemed to constitute an election of remedies, nor shall it preclude the party thus exercising the same from exercising such other and additional rights, remedies or privileges as may be available to such party at law or in equity. Each unit owner agrees in any proceeding brought pursuant to the provisions hereof not to plead or defend the same on the theory of "election of remedies".

E.  Venue -- Every unit owner and all persons claiming any interest in a Unit do hereby agree that in any suit or proceeding brought pursuant to the provisions of this Declaration, such suit shall be brought in the Circuit Court of the Eleventh Judicial Circuit, in and for Dade County, Florida, or in the United States District Court, Southern District of Florida, as the same is now constituted or in any court in the future that may be the successor to the courts contemplated herein.

F.  Appointment of Agent -- Should suit be instituted, each unit owner does hereby irrevocably appoint the Secretary of State of the State of Florida as unit owner's agent for the acceptance of service of process should, at the time of such service of process, any such person shall not be found within the County of Dade, State of Florida.  The provisions hereof shall not be applicable to the Developer.

XXXII.    ADDITIONAL PROVISIONS

A.  Should any dispute or litigation arise between any of the parties whose rights and/or duties are affected or determined by this Declaration or any of the Exhibits attached hereto, said dispute or litigation shall be determined pursuant to the laws of the State of Florida.

B.  In the event that any of the terms, provisions or covenants of this Declaration or any of the Exhibits attached hereto are held to be partially or wholly invalid or unenforceable for any reason whatsoever, such holdings will not affect, alter, modify, or impair in any manner whatsoever any of the other terms, provisions or covenants hereof or the remaining portions of any terms, provisions or covenants held to be partially invalid or unenforceable herein.

C.  Except as may be provided in Article XXVII herein, unless all Institutional Mortgagees have given their prior written approval, the Association shall not be entitled to: (1) change the pro rata interest or obligations of any Unit for purposes of levying assessments and charges and determining shares of common elements and common surplus of the Condominium; (2) partition or subdivide any Unit or the common elements of the Condominium; or (3) by act or omission seek to abandon the Condominium regime, except as may be provided by statute in case of substantial loss to the Units and to the common elements of the Condominium.

D.  Notwithstanding anything to the contrary herein, nothing shall prevent the combining of Units in the Condominium, by appropriate amendment to the Declaration, but said combined Units shall retain their original appurtenant shares of the common elements, common expenses and common surplus and voting rights in the Association.

-28-

BERZOW, KONE, KAN & GLASER, P.A., 20803 BISCAYNE BOULEVARD, SUITE 200, P.O. BOX 6220, HALLANDALE, FL 33008 - (305) 935-6888

OFF. 6504 PG 3987
REC.

E.   Whenever the context so permits, the use of the plura
shall include the singular, and any gender shall be deemed to includ
all genders.

F.   Captions used in these documents are inserted solely as a
matter of convenience and shall not be relied upon or used in construin
the effect or meaning of any of the text of the documents.

G.   Upon written request, Institutional Mortgagees shall hav
the right to examine the books and records of the Association. In addi
tion, upon written request, Institutional Mortgagees shall be entitle
to receive written notification from the Association of:

   1.   Any condemnation loss or any casualty loss whic
affects a material portion of the Condominium Property or any Uni
encumbered by an Institutional Mortgage;

   2.   Any delinquency in the payment of assessments o
charges owed by an owner of a Unit encumbered by an Institutiona
Mortgage, which remains uncured for a period of 60 days;

   3.   Any lapse, cancellation or material modification o
any insurance policy or fidelity bond maintained by the Association.

H.   Institutional Mortgagees may, jointly or singly, pay taxes
or other charges which are in default and which may or have become a
charge against any portion of the common elements and Institutiona
Mortgagees may pay overdue premiums on hazard insurance policies, o
secure new hazard insurance coverage on the lapse of a policy, for th
common elements and Institutional Mortgagees making such payment shal
be entitled to receive immediate reimbursement therefor from th
Association, and to the extent of the monies so advanced sai
Institutional Mortgagee(s) shall be subrogated to the assessment an
lien rights of the Association against the individual Units for th
payment of such item of common expense.

I.   No provision of this Declaration shall be deemed to give
any unit owner, or any other party, priority over any rights of an
Institutional Mortgagee under its mortgage in the case of a distributio
to such unit owner of insurance proceeds or condemnation awards fo
losses to or a taking of any portion of the common elements or commo
property.

J.   All taxes, assessments and charges which may become lien
prior to the liens of Institutional Mortgagees under local law shal
relate only to the individual Units and not to the Condominium Propert
as a whole.

K.   Upon written request from the Department of Housing and
Urban Development or from the Federal National Mortgage Administratio
or from the Federal Home Loan Mortgage Corporation or from the Veterans
Administration, the Association shall prepare and furnish within a
reasonable period of time an audited financial statement of the
Association for the immediately preceding fiscal year of the Associa-
tion.

L.   Neither the Association nor the unit owners shall
interfere with the sale of Units by the Developer. As long as the
Developer owns at least one (1) Unit in the Condominium, the Develope
(or its duly authorized agents or assigns) may make such use of the
unsold Unit(s) and the common elements (including any portions of the
common elements designated as offices on the Plot Plan, Survey and
Graphic Description, attached hereto as Exhibit "A") as may facilitate
the Developer's administrative activities (which administrative
activities may include, but shall not be limited to, administration of
the Association, bookkeeping, post closing repair work and Developer
sales, leasing and closing functions) and sales (with respect to units
within this Condominium and/or with respect to the sale and/or lease of

-29-

BERZOW, KOHN, KAN & GLASER, P.A., 23033 BISCAYNE BOULEVARD, SUITE 200, P.O. BOX 800, HALLANDALE, FLORIDA 33009, (305) 456-5900

BEDZ2QU&KQRN          TEL:936-9502          Sep 07'94    9:29 No.005 P

REC.16504P3988

units in other developments owned by the Developer and/or by entities affiliated with the Developer) including, but not limited to, the maintenance of administrative offices and the maintenance of sales and/or leasing offices, for the showing of the Unit(s) and for the display of signs, billboards and visual promotional materials. The Developer may use unsold Units as model units. Any administrative, sales offices and/or leasing offices and/or model units and all personal property, furnishings and signs contained therein and/or appurtenant thereto shall not be considered common elements, but shall remain the separate property of the Developer.

IN WITNESS WHEREOF, the Developer has caused this Declaration of Condominium to be executed this 7th day of September, 1994.

Signed, Sealed and Delivered
in the Presence of:

THE ARMONIA CORPORATION, a Florida corporation.

By: _____
   JOHN C. SCURTIS, Vice-President

Print Name: Evangeline Scurtis

Print Name: Grizelle E Rios

Address: 1402 South Bayshore Dr.
         Miami, Florida 33129

STATE OF FLORIDA  )
                  ) SS:
COUNTY OF DADE    )

The foregoing instrument was acknowledged before me this 7th day of September, 1994, by JOHN C. SCURTIS, as Vice-President of THE ARMONIA CORPORATION, a Florida corporation. He is personally known to me and did take an oath.

_____
Notary Public, State of Florida

Print Name: Lucas A. Dominguez

My Commission Expires:

Offical Notary Seal
Lucia A. Dominguez
Notary Public State of Florida
Commission No. CC190082
My Commission Exp. Mar 31, 1996

STATE OF FLORIDA  )
                  ) SS:
COUNTY OF DADE    )

The foregoing instrument was acknowledged before me this 9th day of September, 1994, by JOHN C. SCURTIS, as Vice-President of THE ARMONIA CORPORATION, a Florida corporation, who is personally known to me or who has produced _____ and who do not take an oath.

_____
Notary Public, State of Florida

Print Name

My Commission Expires:

2605/R

-30-

BEDZOW, KONN, KAN & GLASON, P.A., 20803 BISCAYNE BOULEVARD, SUITE 200, P.O. BOX 6020, HALLANDALE, FL 33008 · (305) 935-6688